## Case No. 1,929.

### BRONSON v. KUKUK.

[3 Dill. 490;[1] 8 West. Jur. 666.]

Circuit Court, D. Iowa. 1874.

PUBLIC LANDS—LAND WARRANTS—RIGHTS OF ASSIGNEES — TAXABILITY OF LANDS LOCATED BY FRAUDULENT WARRANT CANCELLED BEFORE PATENT ISSUED.

1. Until a patent for land emanates, the legal title thereto remains in the United States, and it will protect any equity which the United

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

States may have in the land from a sale for taxes by the state.

[See Turner v. American Bap. Miss. Union, Case No. 14,251; Union Mill & Min. Co. v. Ferris, Id. 14,371.]

2. In 1853, the plaintiff, as the assignee of a land warrant, located it upon a tract of land; in 1862, and before any patent had issued, the proper department cancelled the warrant and suspended the location because the warrant had been procured to be issued upon false and forged papers; the plaintiff in the latter part of 1862 substituted another warrant, and in 1863 received a patent: *Held*, that the land was not taxable for 1861 and that a tax sale and deed for the taxes of that year were void.

3. The assignee of a land warrant, fraudulently procured from the government, has no higher legal rights than the warrantee; and the government, although the warrant is regular on its face, is not estopped to deny its validity, although it be in the hands of an assignee for value and without notice.

At law. Ejectment for 160 acres of land. Trial to court. The plaintiff claims title under a patent from the United States to himself, dated June 1, 1863. The defendant is in possession under tax deeds, which are regular and vest the title in the defendant if the land was subject to taxation under the laws of the state of Iowa, for the year 1861. The defendant had no notice of the defect below mentioned in the plaintiff's entry of the land.

On the trial, the plaintiff offered in evidence a patent from the United States to himself, dated June 1, 1863, reciting that it is issued pursuant to the bounty land act of March 3, 1855 [10 Stat. 701], upon a deposit of land warrant No. 98,864, "the warrant No. 25,269, act of 1850, with which the first location was made having been withdrawn and the said warrant, No. 98,864, substituted in lieu thereof." The plaintiff then rested.

The defendant offered in evidence: 1. Local land office certificate, dated December 21, 1853, that land warrant No. 25,269 in the name of Jerenin Lasmate had that day been located on the land in question. 2. Tax deed, showing that the land was duly sold in 1862, for the taxes of 1861, and other deeds showing that the defendant held the title, if any, which those tax deeds conveyed. The defendant thereupon rested.

The plaintiff then offered documentary evidence, showing that on the 9th day of May, 1862, the commissioner of pensions indorsed upon said land warrant, No. 25,269, the following: "Satisfactory evidence having been furnished me that the papers are false and forged on which this warrant was issued, it has, therefore, been this day cancelled and declared void as against the United States," and immediately notified the commissioner of the general land office thereof. This last named officer, June 18, 1862, notified the register of the local land office, "that warrant No. 25,269, located December 21, 1853, by Seymour G. Bronson, was cancelled May 9, 1862, because issued on false and forged papers; that the location is suspended in consequence of such cancellation, and the locator has ninety days to substitute another warrant, or to enter the tract with cash." The time was afterward extended, and the plaintiff within such extended time, to-wit, December 26, 1862, substituted (as recited in his patent of June 1, 1863, supra) said land warrant No. 98,864 in lieu of cancelled warrant No. 25,269. The commissioner of the general land office approved of this substitution January 9, 1863, and notified the local land office "that the patent would issue as early as practicable, in the name of Seymour G. Bronson." It was accordingly issued June 1, 1863, and is the only patent for the land in question which was ever issued.

Against the defendant's objection the plaintiff offered the records of the pension office, concerning warrant No. 25,269, which was declared void, and said warrant No. 98,864, and which tended to show that warrant No. 25,269 was issued upon a false and fraudulent application in favor of Jerenin Lasmate, when the real soldier was Jeremin Lasmatre, to whom, for the same service, a warrant had already been issued at the time warrant No. 25,269 was issued. The land is worth $3,000. [Judgment for plaintiff.]

Brown & Dudley, for plaintiff.

Gatch, Wright & Runnels, for defendant.

DILLON, Circuit Judge. The plaintiff located a land warrant on the land in controversy, in 1853, but when in 1862 the warrant reached the pension office in due course, it was pronounced to have been issued on false and forged papers, and it was in consequence cancelled on the 9th day of May of that year, and the plaintiff given time to substitute another warrant, which he did in the latter part of 1862 and received a patent for the land dated June 1, 1863. Meanwhile, the state of Iowa assessed this land for taxation for the year 1861, and sold it in 1862 for the delinquent taxes of the preceding year. If the land was subject to taxation for 1861, the title is in the defendant; otherwise it is in the plaintiff. Until the patent issued the legal title remained in the United States, yet if, "the right to a patent is complete, and the equitable title is fully vested in a party without anything more to be paid, or any act to be done going to the foundation of his right," the land may be taxed, though no patent therefor has yet emanated. Kansas Pac. Ry. Co. v. Prescott, 16 Wall. [83 U. S.] 603, 608.

Assuming that the first warrant was procured from the government upon false and fraudulent papers, the location of such a warrant, if made by the warrantee, would not give any equity to the land as against the government. This is clear. And since

land warrants are not commercial or negotiable instruments, it is equally clear upon principle and authority (Mechanics' Bank v. New York & N. H. R. Co., 13 N. Y. 599, 623; Wilcox v. Howell, 44 N. Y. 398), in the absence of a controlling statute, that the assignee of a warrant has, as against the government, no higher equities than the warrantee. Not only is there no statute placing the assignee upon better ground than the warrantee, but the act of congress making land warrants assignable only does so to the extent of "vesting the assignee with all the rights of the original owner of the warrant." Act of March 22, 1852; 10 Stat. 3. The first warrant was decided by the proper officers of the government to have been fraudulently obtained, and the documentary evidence shows that this decision was justified by the facts, and it was acquiesced in by the plaintiff.

If these views are correct the result is that the location of the first warrant did not give a complete equity to the land, and if nothing more had been done the government would have been equitably, as it was legally, the owner of the land, and hence the land was not subject, while this condtion of things remained, to taxation. This condition did remain until December 26, 1862, when a valid warrant was furnished by the plaintiff and substituted for the other, and it was upon this warrant that the patent was issued.

These views are inconsistent with the doctrine contended for by the defendant, and which has the sanction of the opinion of Mr. Attorney General Cushing, that if a land warrant has been fraudulently procured from the government and has passed into the hands of an assignee for value and without notice of the fraud, the government is estopped to question its validity. 7 Op. Attys. Gen. 657. Mr. Wirt, as attorney general, had given a contrary opinion, distinguishing, as Mr. Cushing failed to do, between commercial and negotiable instruments which are governed by a peculiar law, and those which, like land warrants, are not of this character.

Assuming that the government is open to estoppel the same as individuals, the doctrine for which the defendant contends is one which cannot be maintained on legal principles. It applies only to commercial paper. If the maker of an instrument, although not of a commercial character, makes representations aliunde the instrument on which those to whom the representations are made act, the maker is estopped to deny the truth thereof, but the mere issue of such an instrument cannot alone operate to estop the maker from showing, into whosoever hands it may come, that its issue was procured by fraud. This subject is so fully examined, and so satisfactorily discussed in the New York cases above cited, that it is not necessary to do more than to refer to them.

Another position taken by the defendant's counsel is that as the patent recites and the evidence shows that the second warrant was substituted for the first, this substitution has the effect to make the plaintiff's title relate back to the entry of 1853 under the first warrant. There is no statute giving the plaintiff the right to make such a substitution, or declaring the effect of it. Natural justice, indeed, would dictate that he should have an opportunity preferably to others to pay for the land, and this was properly given to him, ex gratia, not of legal right, but as against the government, he cannot be regarded as having purchased and paid for the land, until he located a valid warrant upon it, and until payment for the land had been made, it was not taxable.

It is insisted, however, for the defendant, that although it be true that as against the government the sale of the land for taxes was not valid, yet the plaintiff is estopped, as against the defendant, from asserting such invalidity. But why? The plaintiff has had no transaction with the tax title purchaser, or with the defendant claiming under the tax title purchaser. He has made no representations to either of them, and they have no covenant of his, nor is there any grant or warranty by him so that his title acquired by the location of the second warrant and the patent will enure to them. A purchaser at tax sale buys upon his own suggestion and at his own risk as to the title he obtains, and a subsequently acquired title does not enure to his benefit. There must be a judgment for the plaintiff. Judgment for plaintiff.