Redden v. Tefft.

## J. W. REDDEN v. TAMAR E. TEFFT *et al.*

1. DEED, *Fabricated.* A fabricated or forged deed confers no title or equities whatever upon the alleged grantee.

2. VOID TAX DEED, *Rights Under.* A tax deed void upon its face gives, under the statutes of this state, to a person in the possession of real estate thereunder, but who has made lasting and valuable improvements and paid taxes thereon, rights and equities. (*Smith v. Smith,* 15 Kas. 291.)

3. INVALID TAX DEED — *Possession* — *Improvement* — *Right and Title.* Actual possession taken by a person of 160 acres of land under an invalid tax deed, followed by the making of lasting and valuable improvements thereon and the payment of taxes for many years, gives such possessor a better title and right to the land, in an action in the nature of ejectment, than the temporary prior possession claimed by one, under a fabricated and forged deed, who went upon the land, and, after plowing five or six furrows around a few rods, then inclosed the same with six or eight posts and set out a few shrubs and trees. (*Duffey v. Rafferty,* 15 Kas. 1; *Howell v. McCrie,* 36 id. 636.)

4. —————— *Prior Possession.* Prior possession, even in an action in the nature of ejectment, will prevail over a subsequent possession acquired by entry without lawful right. (*Mooney v. Olsen,* 21 Kas. 691.)

5. JUDGMENT, *When not a Bar.* A judgment of restitution obtained against a tenant in an action for forcible entry and detainer, without notice to the landlord, is not a bar to a subsequent action brought by the landlord against the party obtaining such restitution.

6. ESTOPPEL — *No Application.* Judgments, either before a justice of the peace or in the district court, in actions relating to forcible entry and detainer, are not a bar to any after action brought by either party. The doctrine of estoppel by a verdict in such a case will not apply.

7. POSSESSION — *Improvements* — *Taxes Paid.* Where one claims title to land on account of the prior possession of his grantor, and such prior possession is founded upon a fabricated and forged deed, such possession will not avail against a party who has taken actual possession of the land at about the same time under an invalid tax deed, made valuable and lasting improvements thereon, and also paid taxes on the land for many years.

8. FORGED DEED — *Competent Evidence.* Where a party claims possession of land under a fabricated and false deed, and one of the questions at issue is whether such deed is fabricated and forged, it

is competent upon the trial to show what steps were taken by the party claiming under such deed to obtain title and possession, and therefore it is proper to show that, just prior to the execution of the fabricated and forged deed, he attempted to get another person to execute to him a false deed to the same land.

9. EVIDENCE — *Preponderance.* In civil cases, the preponderance of evidence controls, and this is so although the verdict reflects on the witnesses of the losing side.

10. INSTRUCTION — *No Prejudice.* An instruction which is not absolutely correct in form will not necessitate a reversal of the judgment, if it is apparent that it was not prejudicial to the interest of the losing party.

*Error from Shawnee District Court.*

EJECTMENT. Judgment for plaintiff, *Tefft,* at the January term, 1889. The defendant, *Redden,* comes to this court. All the material facts are stated in the opinion.

*Redden & Schumacher,* for plaintiff in error.
*W. P. Douthitt,* and *H. C. Root,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the nature of eject-ment, brought by Eli A. Tefft against J. W. Redden, to re-cover a quarter-section of land, being the northwest quarter of section 23, township 13, range 13 east, in Shawnee county. Redden filed an answer, admitting possession of the land, and alleging ownership thereof. He further set up the two- and five-year statutes of limitation against any claim of title by Tefft under any tax deed. Trial before the court with a jury. The jury returned a verdict for Tefft. Judgment was entered accordingly. It having been suggested subsequently to the court below that Eli A. Tefft had died intestate, leaving Tamar Eliza Tefft and Arthur I. Tefft his sole surviving heirs, upon proper application, and with the consent of the defendant, they were substituted as plaintiffs in the action. Redden excepted, and brings the case here.

The facts in the case, as disclosed upon the trial, are as follows: On the 15th day of June, 1860, the land was patented

by the United States to John Thayer. It does not appear that he ever took actual possession of the land, or paid any taxes after 1865. The taxes upon the land for 1866 not having been paid, the treasurer of Shawnee county sold the same on the 10th day of May, 1867, to Erastus Tefft. On the 17th day of May, 1870, a tax deed was issued to Erastus Tefft, including this and several other tracts of land sold at the same tax sale, for the gross sum of $118.46. This tax deed was filed for record on the 29th day of May, 1870. On the 28th day of December, 1870, Erastus Tefft and wife conveyed the land to Eli A. Tefft. On the 21st day of September, 1873, Eli A. Tefft and wife conveyed the land to John Anderson. On the 26th day of September, 1878, John Anderson and wife reconveyed the land to Eli [Eliza] A. Tefft. This was filed for record on December 16, 1882. Erastus Tefft paid the taxes on the land for 1867, 1868, and 1869. Thereafter Eli A. Tefft, while in possession of the land, paid taxes thereon from year to year. On the 16th day of June, 1884, H. C. Root, as the agent for Eli A. Tefft, took actual possession of the land, and employed a man living near by to break two acres on the east side thereof. The breaking was done as requested, and Eli A. Tefft paid for the same. Soon after this, J. T. Davis, who also lived near the land, was employed by Root for Tefft to inclose the land with a fence. Davis inclosed the land with a barbed-wire fence the last of June or the first of July, 1884, at the cost of $150 to $200, the posts being one or two rods apart, and the fence having three wires. In December, 1884, Eli A. Tefft and his son built a house upon the land, having four rooms, and also constructed a cheap stable. The next spring they broke other portions of the land, set out shrubbery and trees, and also improved the land in other ways. On the 3d day of May, 1883, there was filed for record in the office of the register of deeds of Shawnee county what purported to be a written conveyance or deed from John Thayer to Wm. H. McClure. H. H. Harris, claiming to be one of the owners of the land with W. H. McClure, under the deed from John Thayer, went

upon the land on April 29, 1883, and had five and one-half furrows plowed around a piece four by six rods square; then inclosed this by six or eight posts, with two barbed wires; also set out six or seven wild gooseberry bushes, three cotton-woods, and two box-elders. This was done by him for the purpose of taking possession of the land under the alleged Thayer deed. John Thayer, the original patentee of the land, never signed or executed any deed to W. H. McClure. The deed was fabricated and forged by some one. On the 23d day of July, 1883, W. H. McClure and wife, by their attorney in fact, James W. McClure, conveyed the land to J. W. Redden, the defendant below. At the time Redden purchased, most of the improvements made by Harris were upon the land. In the winter of 1883 and the spring of 1884, J. W. Redden contracted for some breaking on the land, and also for fencing it. On the 2d day of June, 1885, Redden commenced an action of forcible entry and detainer against Arthur I. Tefft, the son of Eli A. Tefft, for the land. Judgment was rendered in that case in favor of Redden against Arthur I. Tefft for restitution, and also for his costs, taxed at $25.

As the tax deed of the 17th of May, 1870, executed to Erastus Tefft, shows several tracts of land sold together at the tax sale, for a gross sum, it cannot be legally claimed that plaintiff below acquired a good title thereby, and as John Thayer, the original patentee of the land, never signed or executed the deed to W. H. McClure of the 3d of April, 1883, that deed, having been fabricated and forged, conveyed no title to W. H. McClure, H. H. Harris, or J. W. Redden. It was decided in *Duffey v. Rafferty*, 15 Kas. 1, that—

"In an action in the nature of ejectment, the plaintiff may recover, if he has any right to the property, and if that right is paramount to any right to the same possessed by the defendant, although the legal title to the property may be outstanding in some third person, and although some third person may have a better right to the property than the plaintiff."

Therefore the pivotal question in this case is, whether, at

the commencement of the action in the court below, the possession of the land by Eli A. Tefft, under the void tax deed of April 3, 1883, his subsequent payment of taxes, improvements, etc., conferred a better right and title than the possession of J. W. Redden, who acquired the rights, if they had any, of Harris and McClure. "Priority of possession gives precedence, where no better title can be shown as belonging to either." (*Duffey v. Rafferty,* supra.) Counsel for Redden contend that the judgment in the action of forcible entry and detainer brought against Arthur I. Tefft, in June, 1885, determined the prior and lawful possession of the land, and is therefore a bar to this action; that Eli A. Tefft was estopped, if not by the judgment, at least by the verdict. Two sufficient answers dispose of this contention: First, article 13 of procedure before justices, relating to forcible entry and detainer, provides that "Judgments, either before a justice or in the district court, in an action brought under this article, shall not be a bar to any after action brought by either party." (*Buettinger v. Hurley,* 34 Kas. 585; *Waite v. Teeters,* 36 id. 604.) If the judgment rendered is no bar, the doctrine of estoppel by a verdict will not apply in this case. Second, Arthur I. Tefft, the son of Eli A. Tefft, was only holding the land, at the commencement of the action of June 2, 1885, under his father as a tenant. It does not appear that Eli A. Tefft was notified of the pendency of that action, or defended it. Not being a party thereto, he cannot be bound by the judgment, or any proceedings therein. A landlord, without notice or knowledge, cannot be prejudiced in his title by his tenant's acts or defaults.

With the proceedings of Redden against Arthur I. Tefft before the justice eliminated, the inquiry occurs as to the rights and equities of the parties under the verdict and findings of the jury. The payment of taxes is always very strong evidence *prima facie* of ownership. Such evidence is deemed sufficient evidence of title as against the mere wrong-doer. (*Gilmore v. Norton,* 10 Kas. 491.) "Possession with a claim of ownership is not only evidence of title, but it is title itself in a low degree." (2 Bl. Com. 195.) And it is such a title as

will descend to heirs. (2 Bl. Com. 196; *Ludlow v. McBride*, 3 Ohio, 341; *Phelan v. Kelley*, 25 Wend. 389.) With reference to what interest in land will enable a plaintiff to recover in ejectment in this state, see *Duffey v. Rafferty*, supra; *O'Brien v. Wetherell*, 14 Kas. 622; *Simpson v. Boring*, 16 id. 248.

Upon the foregoing authorities, there is sufficient evidence in the record, notwithstanding the invalidity of the tax deed, to justify a recovery by the plaintiff below, if Redden, through his grantors, has no better title or possession. The prior possession claimed by Redden is based upon the acts of Harris and McClure, in April or May, 1883. Their possession was taken under the fabricated and forged deed of April 3, 1883. The evidence clearly supports the forgery of that deed. The findings of the jury bring the knowledge of this forgery very near to H. H. Harris and James W. McClure, the attorney in fact of W. H. McClure. W. H. McClure seems to have been a mere "figure-head" or "dummy;" he lived in Iowa; did not know anything about the purchase of this land, but had given J. W. McClure power of attorney to buy and sell lands in Kansas. Harris and James W. McClure were the active participants. The trail of the serpent is so close to their path, in the acquisition of the false title and the possession thereunder, that it is evident, if they had acted prudently, they ought to have discovered marks of the crime before selling or attempting to sell. The suspicion that they had full knowledge of the crime at its inception ripens almost into conviction. If Harris or either of the McClures had been contending in the court below with Eli A. Tefft, their alleged possession of the land in the spring of 1883 would count for nothing. The courts will not tolerate a criminal act to be the basis of title or possession as against another having the claim and possession which Eli A. Tefft held at the commencement of his action. As was said in *Howell v. McCrie*, 36 Kas. 636, "We will not temporize or refine with this question." Fraud and crime have no standing in the courts upon which to build rights or equities. "Whatever fraud creates, justice will de-

stroy." J. W. Redden seems in this case to be the victim. He paid $825 for the land, and we assume he was deceived, and acted in good faith in making his purchase; but he stands in the shoes of his grantors, Harris and McClure, in asserting a prior possession through them. His possession, thus claimed, is no better than if asserted by them. The fountain of possession, being polluted with crime, confers on him no title or rights whatever.

"It is always the case that some innocent person suffers by reason of the commission of a criminal act, for no good results can flow from it, nor any rights be acquired by it or in consequence of it. We cannot conceive of any state of facts or any chain of circumstances, except it possibly be by estoppel, whereby any person can acquire any interest, estate or lien upon real estate by an instrument to which signatures are forged and a false certificate of acknowledgement is attached." (*Howell v. McCrie,* supra.)

Therefore we conclude that the equities of the case, and also possession, with the claim of ownership, were in Eli A. Tefft prior to that of any *bona fide* or valid possession by Redden.

It is further contended by counsel for Redden, however, that the verdict and special findings of the jury were the result of incompetent evidence and erroneous instructions. We must therefore examine the principal complaints in these matters. Upon the trial, two witnesses, Johnson and Garrett, were permitted to testify about a deed to the land which Johnson testified Harris and McClure gave him in 1882, and requested him to go out of Shawnee county and execute. And in the same connection there was offered in evidence the petition and other papers in the case of W. H. McClure *v.* John Thayer *et al.,* filed in the district court of Shawnee county on January 3, 1883, to quiet the title to this land in W. H. McClure. That action seems to have been dismissed without trial. If Redden had not claimed prior possession through Harris and McClure, who held under the forged deed, all of this evidence would have been improper; but for

the purpose of showing what steps were taken by Harris and McClure to obtain title and possession, and also as to their transactions concerning this land, this evidence was properly received. The deed produced by Johnson and Garrett, in describing this land, was in Harris's own handwriting; was dated at the time they were trying to get title, December 11, 1882, and the name "John Thayer," written on the back of this deed, was in Harris's writing. The action of McClure *v.* Thayer, which was commenced but not carried on to trial, seems to have been brought soon after the failure to induce Johnson to fabricate or forge a deed to the land in the name of John Thayer. The refusal of the court to allow S. T. Griffin to testify as to the general reputation of Johnson for truthfulness and veracity was not erroneous. Griffin had not shown himself a competent witness. He testified, among other things, "that he was not much acquainted with the general reputation of Johnson in the community where he lived." He further testified, "that he could not say exactly what his reputation was."

Counsel also contend that the alleged deed from John Thayer to W. H. McClure cannot be set aside by a preponderance of the evidence, and therefore that the instruction upon this point was not sufficient. The plaintiff below was entitled to recover if he had the weight or preponderance of evidence in his favor. And this is so although the verdict might have reflected on the witnesses of the losing side. In civil cases the preponderance of evidence controls, but, of course, where a deed is signed and duly acknowledged, a jury will not find the deed to be a forgery, and a court will not affirm such a finding, unless the evidence is sufficient in its preponderance to establish the wrong or crime. The certificate of acknowledgment to a deed is only *prima facie* proof, and may be overcome by a preponderance of evidence. It may be said, to set aside a deed, that the evidence should be clear and satisfactory; but although some instructions were refused which might have been given, the instructions were sufficiently full, in view of all the evidence. The notary public who took the acknowledgment to

the forged deed testified that he did not and does not know the person who signed the same as John Thayer.

It is also contended that the court erred in its instruction to the jury, that the deed from John Anderson and wife, of the 26th day of September, 1878, was to Eli A. Tefft, and thereby conveyed to him the rights of Erastus Tefft, acquired by him under the tax deed. In the record it appears that the deed is to Eliza A. Tefft, not to Eli A. Tefft. One of the counsel arguing this case said that the record is at fault; that the deed introduced was in fact to Eli A., and not to Eliza A. But we are bound by the record brought here, and therefore must treat the deed as it reads. But even if written Eliza A., it was intended for Eli A. Tefft, and therefore Eli A. acquired in equity all the rights and interest of Anderson and wife to the land, and, as a consequence, the rights of their grantor, Erastus Tefft; so the instruction was not prejudicial.

Finally, it is contended that the trial court committed error in calling the attention of the jury to the evidence of Redden concerning the failure to produce the forged deed. Redden was introduced as a witness by plaintiff below, and testified that at one time he had possession of the deed, but had lost it, and therefore was unable to produce it. "The party calling a witness is not precluded from proving the truth of any particular fact by any other competent testimony in contradiction to what the witness may have testified." (1 Greenl. Ev., 14th ed., § 443.)

All the facts and circumstances testified to were before the jury for their consideration, and, after carefully reading all of the instructions, we cannot say, upon the whole record, that there was any error affecting the rights of the defendant below.

The judgment of the district court will therefore be affirmed.

All the Justices concurring.