KATE KOHN v. KATE K. BARR *et al.*

1. PUBLIC LAND—*Certificate of Entry—Forged Assignment—Cancellation.* Where a certificate of entry or purchase of public land was procured by a locator on a military bounty land warrant, having a forged assignment thereon, which was subsequently canceled by the proper department on account of the forgery in the assignment, and the patent suspended until a valid warrant, properly assigned, was substituted, such entry or purchase did not give the locator any equity to the land as against the government, before the new warrant, properly assigned, was furnished and accepted.

2. TAXATION—*Constructive Trust—Title.* In 1858, M. located 160 acres of land on a military bounty warrant having a forged assignment thereon. In 1861, and before any patent had been issued, the proper department canceled the certificate of entry on account of the forgery in the assignment, and suspended the issuance of the patent upon the entry. On July 23, 1883, one K., claiming 80 acres of the land under a conveyance from the locator, substituted another warrant with a valid assignment thereon, and, in 1884, a patent was issued in the name of the locator. *Held,* That the land was not taxable prior to the 23d of July, 1883, at the time that a land warrant, properly assigned, was furnished and accepted; and *held,* also, that K., having furnished the land warrant under the condition from the proper department that M., the locator, or any person interested, might substitute a valid land warrant in the place of the one having the forged assignment thereon, which new warrant, so substituted, was to be legally assigned to the original locator by name, within 90 days from the date of the order, or pay $200 in cash, the furnishing of such valid land warrant on July 23, 1883, by K. did not create a resulting or constructive trust, so as to give K. either a legal or equitable title to 80 acres thereof as against a purchaser holding under a conveyance from M., the locator, executed in the form of a warranty deed, on January 14, 1859, or his grantees.

*Error from Atchison District Court.*

ON the 11th day of May, 1887, *Kate Kohn* brought her action against *Kate K. Barr*, E. W. Sargent and Samuel E. Ballenger to recover possession of 80 acres of land in Atchison county, and for damages for the unlawful detention of the same. On October 7, 1887, Samuel E. Ballenger filed his separate answer and cross petition, in which he denied plain-

tiff's title; alleged that he was the owner of the land, and in actual possession thereof; the commencement of a former action for the land, and its final disposition. The answer further alleged, that Ballenger and his grantors had been in the actual possession of the land for more than two years prior to the commencement of the action, and that the tax deeds under which the plaintiff claimed title had been of record more than two years prior to the filing of the petition. Ballenger asked that the plaintiff's action be dismissed, and that her tax deeds be canceled, and that his title and possession to the land be quieted. The other defendants answered that they had conveyed the land, and adopted the answer of Ballenger. The plaintiff filed a reply to the answers of the defendants. The case was first tried before the court, on the 23d day of January, 1888, and judgment was rendered in favor of the defendants, quieting the title and the possession of the land in Ballenger. A second trial was awarded upon the application of the plaintiff. On July 12, 1888, the plaintiff asked leave to file an amended petition, setting up a title acquired by her on July 10, 1888, under a tax deed from Atchison county. This motion the court refused. The plaintiff then dismissed her action without prejudice. Ballenger demanded a trial upon his answer and cross petition. The court permitted the plaintiff to file a supplemental reply to the answer and cross petition of the defendant, in which she alleged title and right of possession. To this pleading the defendant Ballenger replied. Upon this condition of the pleadings, the case was tried a second time, Hon. M. T. FRAME, judge *pro tem.*, presiding, and judgment was rendered quieting the title to the land in the defendant Samuel E. Ballenger.

The court, in its conclusions of fact, found, in substance, that 160 acres of land, including the land in controversy, were located by William C. McClellan, on March 6, 1858, on a military bounty land warrant, under act of 1855; that on December 18, 1861, the commissioner of pensions canceled the certificate, on account of forgery in the assignment, and the commissioner of the general land office suspended the is-

suance of the patent upon the entry; whereupon the commissioner of the land office notified the register at Atchison of the action taken in the premises, and that McClellan would be allowed 90 days in which to reënter the land by paying $200 cash, or substituting a valid warrant, properly assigned to him by name, and to notify McClellan of this action taken. This was never done by McClellan, and upon February 18, 1884, the commissioner of the general land office again extended the time to 90 days from that date, within which McClellan, or any person interested, might substitute a valid land warrant assigned to McClellan by name, or pay $200 in cash. On July 23, 1883, another land warrant was substituted in lieu of the one used by McClellan, which warrant was not furnished by McClellan, but by the plaintiff, Kate Kohn, at her own expense; and plaintiff, at the time of the substitution, requested that the patent issue to her, she being at the time the owner of the other 80 acres of the quarter section of land entered by McClellan, which she had derived by conveyances from him. On April 5, 1884, the land in question was patented to William C. McClellan, and the patent filed for record on the 13th of February, 1885, in the office of the register of deeds of Atchison county. On January 14, 1859, Wm. C. McClellan conveyed the land in question, by general warranty deed, to Edwin H. Anderson, which deed was recorded February 16, 1859, and the defendants claimed by conveyances from Anderson. The rental value of the property in controversy was $240 per year. In May, 1883, Kate K. Barr took possession of the land, and such possession was continued by her and her grantees, including Samuel E. Ballenger. F. D. Mills, the attorney and agent for Samuel E. Ballenger, made a proper tender to the proper officer of Atchison county of the taxes for the year 1886, on December 20, 1886. In the year 1862, the land in question was placed on the tax rolls of Atchison county, and assessed for taxes; and on May 9, 1863, was sold for the taxes so assessed, and bought in by the county, and the certificate of such tax sale was issued and assigned by the treas-

urer of Atchison county to Kate Kohn, on March 19, 1868. The subsquent taxes for the years 1863, 1864, 1865, and 1866, aggregating $40.55, were indorsed on the certificate. On March 19, 1868, Kate Kohn received a tax deed from Atchison county, which was recorded on April 9, 1889. Thereafter she paid the taxes of 1867, 1868, 1869, 1870, and 1871. The taxes for 1872 were not paid, and the land was sold for the nonpayment thereof, in 1873, for the sum of $20.30, to J. E. Wagner, and there was indorsed on the certificate the taxes of 1873, 1874, and 1875. In the year 1876, Kate Kohn took an assignment.of the certificate of sale from J. E. Wagner, and paid the taxes for that year. For the year 1877, Kate Kohn redeemed the land, and took certificate for the payment thereof. For the years 1878, 1879, 1880, 1881, 1882, 1883, 1884, 1885, and 1886, Kate Kohn paid the taxes upon the land. On July 1, 1888, L. F. Bird, acting as attorney for Kate Kohn, tore the tax certificate from the tax deed of date March 19, 1868, and presented the same to the county clerk of Atchison county, and he thereupon assigned the same, and issued a tax deed of that date to Kate Kohn, which was recorded on the same date in the office of the register of deeds of Atchison county. On March 16, 1885, Kate Kohn commenced her action in the district court of Atchison county, against Kate K. Barr and E. W. Sargent, to recover possession of the property, and for damages for withholding the same. Both defendants filed answers, and issues were reached, and at the June term of the court the plaintiff waived trial of the cause, and on the 19th day of May, 1886, the district court of Atchison county dismissed the action of plaintiff, because she had waived the first trial in ejectment and was not entitled to a second trial, according to the ruling of the court. Thereupon Kate Kohn appealed her case to the supreme court of this state, which court affirmed the judgment of the district court. As before stated, on the 11th of May, 1887, Kate Kohn instituted this action, and on January 26, 1889, she dismissed her other action without prejudice; whereupon the defendant Ballenger demanded a trial upon his

answer and cross petition, to which the plaintiff was allowed to file an amended reply, which answer,·cross petition and reply constitute this action.

*L. F. Bird,* for plaintiff in error:

The principal question in this case is, was the land taxable for the year 1862? On March 6, 1858, when the land was located by Wm. C. McClellan, and was paid for by a military bounty land warrant, under the act of March 3, 1855, it at once became segregated from the public domain, and was private property, and subject to taxation in the year 1862, although a patent had not been issued therefor. "When the land was purchased and paid for, it was no longer the property of the United States, but of the purchaser. He held a final certificate for it, which could no more be canceled by the United States than a patent. . . . It is said the fee is not in the purchaser but in the United States until the patent shall issue. This is so, technically, at law, but not in equity. The land in the hands of the purchaser is real estate. . . . In every legal and equitable aspect, it is considered as belonging to the realty. Now, why cannot such property be taxed by its denomination as real estate?" *Carroll v. Stafford,* 3 How. 460, 461; *Stone v. Young,* 5 Kas. 232; *McKean v. Crawford,* 6 id. 112; *McKean v. Massey,* 6 id. 122; *Watterson v. Kirkwood,* 8 id. 463; *Wheeler v. Merriman,* 30 Minn. 372; *People v. Shearer,* 30 Cal. 645, 655; *Lux v. Haggin,* 10 Pac. Rep. (Cal.) 776. When the patent was issued, on April 5, 1884, it related back to the entry, on March 6, 1858. By the issuing of the patent, no new title was acquired by McClellan, but he merely obtained the evidence of the title that he procured by his original entry, the entry and the patent being regarded as one title. *Stark v. Starrs,* 6 Wall. 402, 418; *Briggs v. McClain,* 43 Kas. 655; *Railroad Co. v. Wilcox,* 14 id. 259; *Shepley v. Cowan,* 91 U. S. 330, 337; *Smelting Co. v. Kemp,* 104 id. 647; *Bagnell v. Broderick,* 13 Pet. 450, 451; *Landes v. Brant,* 10 How. 348.

"A certificate of purchase, issued in due form, in favor of a preëmptor, for land subject to entry under the preëmption laws, cannot be canceled or set aside by the land department for alleged fraud in obtaining it; but in such a case the government must seek redress in the courts, where the matter may be heard and determined according to the law applicable to the rights of individuals in like circumstances." *Smith v. Ewing*, 23 Fed. Rep. 741; *United States v. Freyberg*, 32 id. 197; *Jeremiah Hall*, 1 L. D. C. 7; *Hallerman v. Carter*, 2 id. 57; *L. C. Black*, 3 id. 101; *Lytle v. Arkansas*, 9 How. 333; *Wirth v. Branson*, 98 U. S. 118; *Coal Co. v. United States*, 8 S. C. Rep. 131; *Railroad Co. v. Whitney*, 10 id. 114; *Arnold v. Grimes*, 2 Iowa, 2; *Klein v. Argenbright*, 26 id. 495.

"A purchaser in good faith, for a valuable consideration, from a preëmptor of the land included in the latter's certificate of purchase, takes the same purged of any fraud which might have been committed in obtaining said certificate." *Smith v. Ewing*, 23 Fed. Rep. 741.

The United States, and the United States alone, is the only one that has any right to question her title. *Baker v. Newland,* 25 Kas. 26; *Reynolds v. Reynolds*, 30 id. 98.

*Mills, Smith & Hobbs,* for defendants in error:

The discussion or decision of the question whether the land in dispute was subject to taxation prior to the year 1884, and as to the validity of such taxes as in fact were assessed by the taxing officers of Atchison county, was not necessary to the proper and legal termination of the case by the trial court in favor of defendant Ballenger, nor to the consideration of this record by the supreme court in determining whether the decree rendered in favor of Ballenger should be affirmed. We contend, however, that if this was the only question involved, and a confirmation or reversal of the judgment rendered hinged thereon, the decree was right by the clear weight of all the authorities. The land was located or entered by William C. McClellan with a fraudulent military bounty land warrant on the 6th of March, 1858. On De-

cember 18, 1861, the certificate or warrant was canceled on account of forgery in the assignment, and the general land office suspended the patent, and required a valid warrant be substituted or the payment of $200 within 90 days from last-named date. This was never done, and no further action taken prior to 1884. During this period of time, therefore, the land remained government property with no right in any person to have a patent issued, or to have the title conveyed by the government. These facts are jurisdictional. See *Taylor v. Miles*, 5 Kas. 498; *Comm'rs of Saline Co. v. Young*, 18 id. 440; *K. P. Rly. Co. v. Prescott*, 9 id. 38; *Railway Co. v. Prescott*, 16 Wall. 603; *Railway Co. v. McShane*, 22 id. 444; *Ballenger v. White*, 5 Neb. 399; *Railway Co. v. Taylor Co.*, 52 Wis. 37.

The case of *Donovan v. Kloke*, 6 Neb. 124, is very similar to the case at bar on the facts.

Until the patent is issued, the legal title is in the government; until all payments are made or conditions fulfilled upon which right to patent is based, the equitable title is not in the purchaser. While the title has inception at the date of an entry on public land, this inceptive right cannot be invoked to burden the holder and require him to pay taxes when he holds neither the equity nor title to the land. *Reynolds v. Plymouth Co.*, 55 Iowa, 90; *Gibson v. Chouteau*, 13 Wall. 92. Hence, where a party located certain land with scrip and a patent was issued, and the scrip was afterward discovered to be forged, and the patent canceled, *held*, that he acquired no title to such entry which rendered the land subject to taxation. *Reynolds v. Plymouth Co.*, 55 Iowa, 90; *Bronson v. Keokuk*, 3 Dill. 490; *Calder v. Keegan*, 30 Wis. 126; *Donovan v. Kloke*, 6 Neb. 124. See, also, *Scott v. Chickasaw Co.*, 46 Iowa, 253; 1 Desty, Tax'n, p. 34, *tit.* "Public Lands."

In all the library of books that the brief of counsel for plaintiff in error sets before us, only one case, *Wheeler v. Merriman*, 30 Minn. 372, deals with the point in controversy on this branch of the case. In a *dictum* made by the learned court, after it had disposed of all questions before it necessary

to determine the real controversy, the common-law fiction of relation was said to apply, to validate assessments and tax proceedings between the dates of the original entry and the payment made that finally entitled the locator or his grantee to a patent. If this case can be said to be an authority sustaining such a doctrine, it stands alone as a solitary monument in the judicial archives of this country. The doctrine of relation, so far as affecting taxation during the suspended title, or before the equity passes from the government, is expressly denied by Dillon, circuit judge, in *Bronson v. Keokuk*, 3 Dill. 490. See, also, *Gibson v. Chouteau*, 13 Wall. 92; *Reynolds v. Plymouth Co.*, 55 Iowa, 90; *Calder v. Keegan*, 30 Wis. 126; *Scott v. Chickasaw Co.*, 46 Iowa, 253.

The land not being subject to taxation prior to 1884, all sale certificates and all taxes charged up to such certificates have no validity. See *Hobson v. Dutton*, 9 Kas. 477.

The plaintiff, having actual possession under a claim of title, may maintain an action to quiet his title and possession as against an adverse claimant whose title is weaker than his, or who has no title at all. *Giltenan v. Lemert*, 13 Kas. 476. See, also, *Giles v. Ortman*, 11 Kas. 59; *Brenner v. Bigelow*, 8 id. 496; *Smith v. Cooper*, 38 id. 446; *Illingsworth v. Stanley*, 40 id. 61; *Sanford v. Weeks*, 39 id. 649.

The opinion of the court was delivered by

HORTON, C. J.: The principal question in this case is, was the land taxable for the year 1862? The contention is, that the act of the commissioner in canceling, on the 18th of December, 1861, McClellan's certificate of entry or purchase, on account of the forgery of the assignment of the land warrant, was a nullity, but that, in any event, as a patent issued on April 5, 1884, it related back to the entry of March 6, 1858. It is the further contention, that as Edwin H. Anderson, on January 14, 1859, before the commissioner of pensions canceled the certificate, purchased, for a valuable consideration and in good faith, the 80 acres in dispute from McClellan, he took the same purged of any fraud which might have been

committed in obtaining the certificate. Of course, if the land, in the year of 1862, and prior to July 23, 1883, the time that a valid land warrant was furnished or paid for the land, belonged to the United States, it was not taxable. (*Taylor v. Miles*, 5 Kas. 498; *Comm'rs of Saline Co. v. Young*, 18 id. 440; *Railway Co. v. Prescott*, 16 Wall. 603; *Railway Co. v. McShane*, 22 id. 444.)

"A title begins at the date of an entry on public land, but this doctrine cannot be invoked to burden the holder, and require him, in violation of justice, to pay taxes when he holds neither the equity nor title to the lands; but a party having an equitable title to lands, the legal title being in the United States, is taxable. When sold, the government, until the patent shall issue, holds the mere legal title in trust for the purchaser, and a second purchaser takes the land charged with the trust. Public land can be taxed only when a patent has issued, or when the private proprietor has acquired a 'perfect equity.'" (1 Desty, Tax'n, p. 35.)

It has been decided by this court that "the commissioner of the general land office of the United States has authority to cancel a final preëmption receipt, and set aside the entry, before patent issues thereon; and a mortgagee of the entry man, after final receipt is given, and before the issuance of the patent, takes his mortgage subject to the supervisory power." (*Swigart v. Walker*, 49 Kas. 100; *Fernald v. Winch*, 50 id. 79. See, also, *United States v. Steenerson*, 4 U. S. App. 332, and *Cornelius v. Kessel*, 128 U. S. 456, 461.) If the mortgagee of the entry man takes his mortgage subject to the supervisory power of the commissioner, a purchaser from the entry man must take the land subject to the same supervisory power. The grantees of McClellan "stand in his shoes," and have no better title to the land than if he were now claiming it. Therefore, the principal question is, whether the payment for the land, on July 23, 1883, or the issuance of the patent, on April 5, 1884, related back to the entry of March 6, 1858, so as to make the land prior thereto taxable. There was no sale, or attempted sale, of the land for taxes after the payment was made in 1883.

We do not think that, under the authorities, the doctrine of relation can be applied in this case as affecting taxes assessed upon the land before the 23d of July, 1883. Kate Kohn, as a tax-title purchaser, holds adversely to McClellan and his grantees, and has no equity in the land, on account of her tax title, if the land was not subject to taxation at the time that the taxes were levied. Before July 23, 1883, not only had the United States not parted with the legal title to the land, but an important act remained to be done, that is, the furnishing of another land warrant, or a payment for the land, the failure to do which would have defeated the issuance of the patent. In this connection, the language of Mr. Justice Miller, in *Railway Co. v. Prescott*, supra, is pertinent:

"As the government retains the legal title until the company or some one interested in the same grant or title shall pay these expenses, the state cannot levy taxes on the land, and, under such levy, sell and make a title which might, in any event, defeat this right in the federal government reserved in the act by which the inchoate grant was made."

In *Bronson v. Keokuk*, 3 Dill. 490, it was decided:

"Until a patent for land emanates, the legal title thereto remains in the United States, and it will protect any equity which the United States may have in the land from a sale for taxes by the state. In 1853, the plaintiff, as the assignee of a land warrant, located it upon a tract of land. In 1862, and before any patent had issued, the proper department canceled the warrant and suspended the location because the warrant had been procured to be issued upon false and forged papers. The plaintiff, in the latter part of 1862, *substituted* another warrant, and in 1863 received a patent. *Held*, That the land was not taxable for 1861, and that a tax sale and deed for the taxes of that year were void."

In support of this decision, see, also, *Reynolds v. Plymouth Co.*, 55 Iowa, 90; *Kalder v. Keegan*, 30 Wis. 126; *Scott v. Chickasaw Co.*, 46 Iowa, 253, and *Donovan v. Kloke*, 6 Neb. 124.

A distinction is attempted to be made by the counsel for Kate Kohn upon the ground that the land warrants, or scrip,

referred to in the cases cited were forged or spurious, and that, as the original entry in this case was canceled on account of the forgery in the assignment only, the government received pay for the land, and therefore that the cases cited are not authority. But the furnishing of a land warrant, held by the locator by a forged assignment only, is no better payment for the land than if the warrant itself were forged or spurious. McClellan had no lawful right to use such a warrant or paper for any purpose. He was not the legal owner or holder of it. It is the same as if it were wholly false and fraudulent. The commissioner treated it as worthless, and canceled the certificate on account of such forgery.

·We are also referred by the same counsel to *Wheeler v. Merriman*, 30 Minn. 372, sustaining his claim that the land in dispute was subject to taxation from the date of the original entry. In view of the many authorities to the contrary, we are not satisfied with the reasoning of that case, and *Witherspoon v. Duncan*, 4 Wall. 210, cited to support it, does not do so. In the last case, the original certificate of entry was properly obtained, and there was no ground for its cancellation on account of fraud in the entry. Of course, in such case, "lands originally public cease to be public after they have been entered at the land office and the certificate of entry obtained"— that is, after the certificate of entry has been properly obtained; not after one has been obtained upon a forged land warrant or a forged assignment, or upon fraudulent papers. The only question, however, involved in that case was, whether the occupying claimant holding under the tax proceeding was entitled to the value of the improvements he had placed on the land. The plaintiff held the possession. On this question the trial court awarded the plaintiff the land, but allowed the defendant occupying under the tax deed the value of all improvements. After disposing of the question before the court on the ground stated, the court said: "This disposes of this appeal, but, as another trial may be had, it is proper to consider other questions involved in the case." The court then proceeded to state that the patent, when issued, related back.

We have also examined the other cases cited in support of the claim that a patent, when issued, relates back to the original entry. With the exception of the Wheeler case, we cannot find any decision in support thereof, upon such facts as are disclosed in the record before us.

Our conclusion is, that as the certificate of entry was procured by McClellan from the government upon a forged assignment, such entry or purchase did not give him any equity to the land as against the government. Paraphrasing the language of that eminent judge, Dillon, in *Bronson v. Keokuk*, supra, we may say that natural justice, indeed, would dictate that McClellan should have had an opportunity preferably to others to pay for the land, and this was properly given to him, *ex gratia*, not of legal right; but, as against the government, he cannot be regarded as having purchased and paid for the land until he or some other person located a valid warrant upon it, and, until payment for the land had been made, it was not taxable.

1. Public land—certificate of entry—forged assignment—cancellation.

Finally, it was suggested that, as Kate Kohn requested that the patent for the land should issue to her when she furnished the valid land warrant to pay for the same, a resulting or constructive trust must be inferred from all the facts and circumstances surrounding the case, so as to entitle her to recover in this action. It appears that the substitution or payment by Kate Kohn was upon the following condition:

"Upon the 18th day of February, 1884, the commissioner of the general land office, at Washington, D. C., again extended the time within which the locator, or any person interested, might substitute a valid land warrant, assigned to the original locator by name, within 90 days from that date, or pay $200 in cash."

Kate Kohn knew at the time she made the substitution what this condition was, and that the patent had to be issued to McClellan. She knew, therefore, that it would not be issued to her. Her request was not complied with, and therefore amounted to nothing. When the patent was issued, it

was issued to McClellan. The land warrant that was furnished had to be assigned to McClellan, the original locator. When the patent was so issued to McClellan it was not returned or refused. It was filed for record in the office of the register of deeds of Atchison county, on the 13th of February, 1885. Of course, Kate Kohn had constructive notice of the filing thereof, if she did not actually file the same for record. The patent, when issued to McClellan, procured the title to the 80 acres, which Kate Kohn had purchased from him, and which she also then owned. It would also have made her tax title good to the other 80 acres, if the land had been taxable and the tax proceedings regular. Section 6, of chapter 114, General Statutes, relating to trusts, reads:

"When a conveyance for a valuable consideration is made to one person, and the consideration therefor is paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections."

It is conceded that the next two sections do not bring Kate Kohn within their provisions. If, however, there is any resulting or constructive trust outside of the provisions of the statute, we cannot say, upon the facts disclosed, that there is anything in this case to put in operation such resulting or constructive trust. It is not claimed that McClellan had anything to do with the land warrant furnished by Kate Kohn. That transaction was solely between her and the government. She was not misled by McClellan, or any agent of his, as to the issuance of the patent. She knew the offer the government had made about the substitution of a land warrant, or payment, and, although she made a request which was not granted, she accepted the terms of the offer. The offer of the government to permit anyone interested in the land to pay for the same was not a legal right, but was given *ex gratia*. Kate Kohn was interested in 80 acres of the land by purchase from McClellan, and she may have believed that she was also interested in the other 80 acres by virtue of her tax claim. If she so believed, it was

2. Taxation— constructive trust—title.

a mistake of law upon her part. The land was not taxable prior to July 23, 1883. It is probable that, upon proper proceedings, one-half of the value of the land warrant substituted, $100, and interest, might have been recovered by Kate Kohn, and the land in dispute sold therefor, but this question is not presented in the record.

The judgment of the district court will be affirmed.

All the Justices concurring.