## JOHN P. FREESE v. EDWARD SCOUTEN *et al.*

1. OSAGE INDIAN LANDS—*Entry and Purchase.* All that is required of an applicant to make an entry and a purchase of a tract of the Osage Indian trust and diminished reserve lands is, that he shall have all the qualifications of a preëmptor; that he shall be an actual settler on the land at the date of his entry, and that he shall make full payment therefor.

2. ——— *Rights of Mortgagee.* A mortgagee from an entryman of a tract of Osage Indian trust and diminished reserve lands, after final receipt is given, and before the issuance of the patent, takes his mortgage subject to the supervisory power of the commissioner of the general land office of the United States.

3. FRAUDULENT CANCELLATION OF ENTRY—*Mortgagee not Bound Thereby.* If an applicant or entryman, having all the qualifications of a pre-

emptor, and being an actual settler on the land at the date of his entry, purchases and pays for a tract of the Osage Indian trust and diminished reserve lands, and, after obtaining his final receipt, executes a mortgage to another party upon the land, and then, for the express purpose of defrauding the mortgagee, enters into a collusive and fraudulent agreement with a third person to have his lawful entry canceled, and in pursuance thereof a collusive contest is commenced by such other person against the entryman, and, by the collusion and fraud of the parties, the United States land officers are imposed upon, and a cancellation of the entry is obtained, so as to apparently transfer the title and interest of the entryman to such other person, *held*, that, as to the mortgagee having no notice of the contest or of any of the proceedings, such cancellation, having been obtained by collusion and fraud of the parties thereto, does not bind or conclude him.

*Error from Kiowa District Court.*

On March 10, 1885, Edward Scouten made an entry in the local United States land office at Larned of the northeast quarter of section 24, township 28 south, of range 20, in Kiowa county, containing 160 acres of land. On March 17, 1886, he executed and delivered two mortgages upon the same land to the Showalter Mortgage Company, one to secure $400 with interest, and the other to secure $60 with interest. One mortgage was recorded on the 19th day of March, 1886, and the other mortgage was recorded on the 20th day of March, 1886. The land in controversy is a part of the Osage Indian trust and diminished reserve lands. On the 5th day of March, 1889, Charles E. Lewis made an entry of the same land at the local land office at Larned. Subsequently he contested with Scouten for the land, and on September 8, 1888, the commissioner of the general land office, at Washington, canceled the entry of Scouten. On May 31, 1889, this action was commenced by John P. Freese, as the owner of the mortgages, to foreclose the same. June 12, 1890, judgment was entered in the district court in favor of Chas. E. Lewis. Exceptions were properly taken to the judgment. On June 10, 1891, John P. Freese filed his petition for a new trial. March 3, 1892, judgment was entered sustaining a demurrer

to this petition for a new trial, which is complained of in a supplemental petition in error.

*W. H. Demuth,* and *James Lawrence,* for plaintiff in error:

We are met at the threshold of this court with the decisions in *Swigart v. Walker,* 49 Kas. 100, and *Fernald v. Winch,* 50 id. 79, which at first blush would seem to be adverse to the plaintiff herein. While these authorities lay down the rule contended for in this case by the defendant Lewis, yet this case differs materially therefrom. The land involved herein is a part of the Osage Indian trust and diminished reserve lands, and not public lands, and both the cases heretofore decided by this court treat the land as public land. Mr. Justice BREWER, while United States circuit judge, in the case of *United States v. Edward,* 33 Fed. Rep. 104, used the following language, in speaking of the Osage lands:

"All that is required of the applicant is, that he shall have the qualifications of a preëmptor; that he shall be an actual settler, and that he shall make payment. As the government held these lands under a trust to convert them into cash, its primary object was, of course, to realize as soon and as much as possible, and not, as in respect to public lands generally, to have them occupied and improved; so it might properly ignore the question of improvement or length of occupation."

And since that time this decision has been adopted and followed by the land department of the United States. In this connection, we desire to call the court's attention to the case of *Grigsby v. Smith,* 7 Dec. Dep. Int. 98. This land, being Osage trust land, was not entered under the preëmption act of 1841, nor the homestead act, but under a special act, and being § 2283 of the Revised Statutes of the United States of 1878, and the supplementary act of May 28, 1880, chapter 107 of the supplement of the revised statutes. In *Foster v. Brost,* 11 Kas. 351, and *Wood v. M. K. & T. Rly. Co.,* 11 id. 323, this court held this same view. The United States, having received full payment for this land, and the trust being fulfilled, under the decision of Mr. Justice BREWER, *supra,*

had nothing more to do with it but to issue the patent.  When the entry of Scouten was made, and the purchase price paid, he was at once entitled to a patent, and this case should be treated as though the patent had issued.  *Newkirk v. Marshall,* 35 Kas. 83.

The petition for a new trial (under ¶ 4405, Gen. Stat. of 1889) pleaded the fraudulent acts of the defendant Lewis, and the conspiracy entered into by him with Scouten; and the court committed error in sustaining the demurrer thereto. This petition was good, (*Moody v. Branham,* 47 Kas. 314,) and it charged a fraudulent conspiracy.  In *Garland v. Wynn,* 20 How. 6, the court uses the following language:

"The general rule is, that where several parties set up conflicting claims to property, with which a special tribunal may deal, as between one party and the government, regardless of the rights of others, the latter may come into the ordinary courts of justice and litigate the conflicting claims.  Such was the case of *Comegys v. Vasse,* 1 Pet. 212, and the case before us belongs to the same class of *ex parte* proceedings; nor do the regulations of the commissioner of the general land office, whereby a party may be heard to prove his better claim to enter, oust the jurisdiction of the courts of justice.  We announce this to be the settled doctrine of this court."

It was in effect so held in the case of *Lytle v. The State,* 9 How. 328; and again in the cases of *Bernard v. Ashley,* 18 id. 44; *Lindsey v. Hawes,* 2 Black, 554; *Plummer v. Brown,* 12 Pac. Rep. 464; *Glidden v. U. P. Rly. Co.,* 30 Fed. Rep. 660.

*John D. Beck,* and *R. L. Walker,* for defendant in error Chas. E. Lewis:

The decisions of this court in *Swigart v. Walker,* 49 Kas. 100, and *Fernald v. Winch,* 50 id. 79, since this appeal was filed, relieve the defendant in error from citing a long list of authorities.  The law, as stated in the above cases, controls in this case.

The letter of the commissioner of the land office was competent to show that the entry of Scouten had been canceled.

Civil Code, § 384; *Cornelies v. Cassell,* 53 Wis. 395; 33 Ark. 833. Having been so canceled, this court will conclusively presume that it was done upon sufficient evidence and in accordance with the lawful rules of the land department. *Fernald v. Winch,* 50 Kas. 79; *Tatro v. French,* 33 id. 49; *Farris v. A. T. & S. F. Rld. Co.,* 33 id. 280; *Darcy v. McCarthy,* 35 id. 722.

"The officers of the land department are specially designated by law to receive, consider and pass upon proofs presented with respect to settlement upon public lands." *Shipley v. Cowen,* 91 U. S. 340; *Darcy v. McCarthy,* 35 Kas. 722.

The case of *Grigsby v. Smith,* 7 Dec. Dep. Int. 98, cited by counsel for plaintiff, does not in any respect conflict with the position contended for by defendant in error. In the Grigsby case, Grigsby had complied with the law, and hence had acquired absolute right to the legal title, and could sell and convey his right. In the case at bar, Scouten, having failed to comply with the law, had acquired no rights, and could convey none.

The opinion of the court was delivered by

HORTON, C. J.: The answer of the defendant Charles E. Lewis alleged that the entry of the land mentioned in the mortgages executed by Edward Scouten had been canceled on September 8, 1888, by the commissioner of the general land office of the United States. If nothing further appeared in the case, this would be conclusive; because this court will presume that it was done upon sufficient evidence and in accordance with the rules of the land department. (*Swigart v. Walker,* 49 Kas. 100; *Fernald v. Winch,* 50 id. 79.) Section 2283 of the Revised Statutes of the United States provides that these Osage Indian trust lands shall be "sold to actual settlers . . . in accordance with the general principles of the preëmption laws, . . . under the direction of the commissioner of the general land office." The supplemental acts of May 28, 1880, further provide that the land depart-

ment shall prescribe all necessary rules and regulations for the disposition of these lands.

If Edward Scouten was not an actual settler on the mortgaged land at the date of his entry, with the qualifications of a preëmptor, he was not entitled, under the United States statute and the rules and regulations of the land department of the United States, to purchase or obtain any interest in the land. The commissioner of the general land office of the United States, before the issuance of the patent, had full authority, upon a valid contest, to pass and decide upon the qualifications of an applicant to enter and purchase a tract of the Osage trust land. If the entry of Scouten to the mortgaged land was illegal and fraudulent, Scouten obtained no title thereto or interest therein, and the Showalter Mortgage Company obtained no legal or equitable interest by its mortgage or tax certificates, and the plaintiff, the assignee of the mortgage company, standing in the shoes of the company, acquired no more rights than the mortgagee; that is, nothing. (*Kohn v. Barr*, 52 Kas. 269, 34 Pac. Rep. 880.) But to the answer of Lewis, the plaintiff replied that, on March 10, 1885, at the time that Scouten made his entry of the land, he was an actual settler thereon, having all the qualifications of a preëmptor, and that, within the terms of the United States statutes, he became the legal purchaser of the land, paid in full for the same, and received his final certificate; that he afterwards executed the mortgages of which the plaintiff is now the owner and holder; that the alleged contest between Lewis and Scouten over the land was in pursuance of a fraudulent conspiracy entered into between them for the purpose of defeating the liens of the mortgages, and that the cancellation of the entry of Scouten, by the commissioner of the general land office, was procured by their fraudulent agreement and conspiracy; that neither the Showalter Mortgage Company nor the plaintiff had any notice of such proceedings; and that, having been procured by fraud, without notice, the cancellation is wholly void. As to the entry of

Osage Indian trust land, see *United States v. Edward*, 33 Fed. Rep. 104; *Grisgby v. Smith*, (ruling of Secretary Noble, July 17, 1889), 7 Dec. Dep. Int. 98.

If the commissioner of the general land office was imposed upon by a collusive and fraudulent contest between Lewis and Scouten, without any merit therein, but instituted for the sole purpose of apparently changing the title and interest of the mortgaged land from Scouten to Lewis, to cheat and defraud the Showalter Mortgage Company, or the plaintiff, its assignee, neither the mortgage company nor the plaintiff is concluded thereby. It is conceded that neither had notice of such proceedings. If such were actually the case, the cancellation by the commissioner was obtained by the fraud of Scouten and Lewis, to deprive others of their legal rights in the land. The purchaser of Osage Indian trust land, after having complied with the law and received his final certificate, may lawfully remove from the land, or sell or mortgage it. The subsequent settlement of another upon such land, if entered and paid for by the legal applicant, is subject to the applicant's right. (*Grigsby v. Smith*, supra.) Deeds, contracts, judgments, decrees and orders to which parties may resort to cover fraud, and through which they attempt to impose upon others or to obtain unfair and illegal advantages, will not be permitted by the courts to obstruct justice, or to impair the lawful rights of others not parties thereto. A judgment or decree obtained by fraud clearly established binds no court, and may be attacked in a collateral proceeding by a stranger. As was said by this court in *Redden v. Tefft*, 48 Kas. 302: "Fraud and crime have no standing in the courts upon which to build 'rights or equities. Whatever fraud creates, justice will destroy." In view of the allegations of the reply, the trial court should have received the evidence offered to prove that Lewis purchased this land from Scouten, or his grantee, before his entry, and afterwards entered into a collusive and fraudulent contest with Scouten to set aside his entry, for the purpose of defeating the mortgages which had been executed by Scouten.

Further, it was also error to sustain the demurrer to plaintiff's petition for a new trial, in view of the allegations of the newly-discovered evidence of the collusive and fraudulent agreement and conspiracy of Lewis and Scouten to obtain the cancellation of the entry of Scouten, and thereby to defraud the mortgage and tax holders. If all that is alleged in the reply and in the petition for a new trial shall be established upon another hearing, then Lewis will hold the land subject to the mortgages and tax liens. If, under such circumstances, a patent were to issue to Lewis from the United States, he would hold the legal title of the land in trust for Scouten, at least to the extent of the mortgage and tax liens thereon. The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.