. CHARLOTTE E. BLEAKLEY V. CHARLES A. SMART, as·
Judge, etc.

No. 14,949.   (87 Pac. 76.) ·

SYLLABUS BY THE COURT.

1. HABEAS CORPUS—Appeal—Custody of a Child. An appeal
will lie from a judgment of the district court in habeas corpus
proceedings determining the rights of conflicting claimants to
the custody of a child.

2. MANDAMUS—District Judge—Motion for a New Trial. Where
the district court refuses, on proper application, to grant a
defeated party in a civil action a stay of proceedings under
chapter 322 of the Laws of 1905, and,· after the supreme court
has granted a stay of proceedings on the judgment, refuses
to act upon a motion for a new trial pending in the action,
mandamus will lie to compel the judge of such court to act
upon the motion.

Original proceeding in mandamus.   Opinion filed
October 6, 1906.   Writ allowed.

STATEMENT.

THIS is an original action in mandamus, brought
against the judge of the district court of Douglas
county to obtain from him a ruling upon a motion for
a new trial.

The controversy involves what has become known as
the "incubator baby case."   The history of the events
ending in the refusal of the district court to act upon
the motion for a new trial is as follows:   Charlotte E.
Bleakley, claiming to be the mother of Edith Bleakley,
an infant exhibited as one of the "incubator babies" at
the St. Louis World's Fair, brought proceedings in
habeas corpus before the Honorable Emery C. Graves,
circuit judge at Rock Island, Ill.   A judgment was ren-
dered in her favor on July 14, 1905, against Mr. and
Mrs. Barclay, husband and wife, in which that court
found that the infant, Edith, was the daughter of Char-
lotte E. Bleakley and J. J. Bleakley, and was born Feb-
ruary 15, 1904.   It was further adjudged that Charlotte

E. Bleakley was a fit person to have the custody and control of the child; that it was for the best interest and welfare of the child that she be given to her mother; and that a certain deed of adoption, executed by Charlotte E. Bleakley to the Barclays, by the terms of which the Barclays claimed to be entitled to her possession and custody, be set aside and canceled as void. The Barclays were ordered to deliver possession of the child to Mrs. Bleakley, who afterward returned with it to her home in Lawrence, Kan.

About two months later, on September 5, 1905, the Barclays brought proceedings in *habeas corpus* in the district court of Douglas county, setting up that they were citizens of Rock Island county, Illinois, and that the child, Edith, was unlawfully restrained of her liberty by reason of a judgment of the circuit court of Rock Island county, which judgment they alleged was obtained by Charlotte E. Bleakley on account of her falsely and fraudulently pretending to be the child's mother, and setting up in general terms the Illinois judgment and averring that the petitioners had first learned the truth in reference to the child's parentage a short time prior to the making of their application.

Mrs. Bleakley moved to quash the writ upon the ground that it was an attempt by collateral attack to impeach a final judgment of a court of competent jurisdiction; that to do so would amount to a refusal to give full faith and credit to the judicial proceedings of another state; and because the petition of the Barclays failed to allege that any change had taken place in the condition and surroundings of the child since the former judgment. The motion to quash being denied, a return to the writ was made, setting up in full the record of the Illinois judgment, and in addition the same grounds of defense relied upon in the motion.

At the trial the district court decided that the proceedings in Illinois were not *res judicata,* and that the only question involved in the Illinois case was the question of the validity of the deed of adoption, and on

January 25, after a hearing lasting more than a week, adjudged that Charlotte E. Bleakley was not the mother of the child; that the petitioners were entitled to its care and custody, and that it was for its best interest that it should be given into their care and control. It was adjudged that the child should be delivered immediately to the Barclays, upon their execution of a bond to the respondent in the sum of $4000, conditioned that the petitioners should produce the child within the court's jurisdiction in case the supreme court should modify, vacate or reverse the decree of the district court. A special execution was directed to issue commanding the sheriff forthwith to enforce the decree and turn over the child to the petitioners. Thereupon Mrs. Bleakley filed a motion for leave to give a bond to stay proceedings, under chapter 322 of the Laws of 1905, until the case could be brought to this court. The court denied her motion and refused to fix the amount of a supersedeas bond or to permit her to give one. She then filed a motion for a new trial, but this motion the court continued until the next term. She then renewed her application for leave to give a bond to stay proceedings pending an appeal, which was again denied. Exceptions were saved to the several rulings of the court.

During all these proceedings Mrs. Bleakley was present with the child, but at 4:30 o'clock in the afternoon when her last application for a stay was refused she left the court-room, taking the child with her. A half hour later the Barclays filed their $4000 bond and the special execution was issued and placed in the hands of the sheriff. In the meantime Mrs. Bleakley had disappeared, and it afterward developed that she had taken a train and gone with the child to Moline, Ill., the home of the Barclays, and in the county where the judgment in her favor had been rendered.

On February 17, 1906, a verified motion was presented to the district court on behalf of the Barclays, reciting the facts in regard to the removal of the child

from the jurisdiction of the court, and asking that Mrs. Bleakley be required to bring herself and the child within its jurisdiction, or in default that she be adjudged guilty of contempt and that her motion for a new trial be stricken from the files.

On March 3, 1906, the court heard the motion and adjudged that Mrs. Bleakley by her action in wilfully removing the child from the court's jurisdiction was then, and from the 25th day of January had been continuously, in open contempt of court. It was ordered that the motion for a new trial be set for hearing on the 30th day of March, to be heard on that day providing Mrs. Bleakley produced the child in open court at that time, but that in default of so doing the motion to strike from the files would be allowed.

In the meantime a transcript of the proceedings, together with a petition in error, was brought to the supreme court, and this court, on March 21, granted a supersedeas, staying the issuance of any execution upon the judgment upon a bond in the sum of $500, which was duly filed and approved.

On March 30 Mrs. Bleakley filed a petition in the district court of Douglas county to modify the journal entry of March 3, setting up the granting of the supersedeas by the supreme court, and asking to be permitted to purge herself of contempt and to be allowed to argue her motion for a new trial. All of these motions were by the court denied, the court holding that Mrs. Bleakley was still in contempt of court, and that inasmuch as it appeared that since the judgment and order of March 3 she had been prosecuting proceedings in error in the supreme court, and inasmuch as the supreme court had assumed jurisdiction of the cause and was then exercising it, the court declined to hear her application. Again, on April 21, at the next term of the district court, the attorneys for Mrs. Bleakley made another attempt to have the court hear her petition to modify the order of March 3 and to be permitted to save their exceptions to the ruling of the

court, which application was refused, the court declining to state whether the motion for a new trial was or was not still upon the docket, or to make any order with reference to the case. The court stated:

"I simply say what I have said before, that so long as the respondent in this case is in contempt, keeps the child beyond the jurisdiction of the court and is prosecuting an appeal in error in the supreme court I will decline to act upon any motion or application of hers."

Thereupon these proceedings in mandamus were begun to compel the judge of the district court to act upon the motion for a new trial.

*W. B. Brownell, J. Q. A. Norton,* and *E. F. Ware,* for plaintiff; *Gleed, Ware & Gleed,* of counsel.

*Bishop & Mitchell,* and *John H. Atwood,* for defendant.

The opinion of the court was delivered by

PORTER, J.: Numerous contentions are made in regard to the principles of law which it is said are involved in this controversy. Only a few of them in our view need be decided.

(1) It is contended by defendant that the judgment of the district court is not appealable, and that therefore this court was without authority to grant a supersedeas staying execution of the judgment and lacks jurisdiction to order the court below to act upon the motion for a new trial. It is said that no motion for a new trial was proper; that the district court has concurrent jurisdiction with the supreme court in *habeas corpus;* that no provision is made by statute authorizing an appeal from a judgment or decision in *habeas corpus;* and that the weight of authority is to the effect that, independent of any statutory provision, an appeal will not lie. Manifestly the question whether this court may review a judgment or decision of the district court in *habeas corpus* is primarily involved.

Great conflict of opinion exists upon the question

whether a judgment in *habeas corpus* is appealable. Many courts hold that, in the absence of statutory provision, where the action is strictly one to obtain the release of a person who claims to be illegally restrained of his liberty, no appeal lies. Other courts recognize a distinction which sometimes necessarily arises by reason of the nature and scope of the decision and have held that in that class of *habeas corpus* proceedings where the right to the custody of a minor child is the thing determined an appeal will lie. The action is said to partake of the nature of a private suit in which the public has no concern. The rights of the parties are determined as in any civil action, and, being a civil action, the right to appeal follows.

Defendant relies upon the decision in *In re King,* 66 Kan. 695, 72 Pac. 263. In that case we declined to regard a former judgment by another court in *habeas corpus* for the custody of a child as absolutely conclusive and binding upon this court. The controlling consideration, however, was expressly declared to be that of the welfare of the child. It was there said:

"We agree that, so far as such a proceeding is to be considered as a mere trial of conflicting private rights, there is no reason in the nature of things why the doctrine of estoppel by former adjudication should not apply. . . . When a court in a proper proceeding, wherein conflicting claims to the right to the custody of a child are litigated, takes the custody from the parents and bestows it upon some other person, the legal right of the parent is to that extent extinguished and the new custodian has in that respect the same right formerly held by the parents. The parents may not dispute such right nor relitigate it, except upon a new state of facts. But the court has the same power to change the custody as against the new custodian as it had originally against the parents." (Pages 698, 699.)

The case of *In re Hamilton,* 66 Kan. 754, 71 Pac. 817, was decided at the same term. The exact question there was whether a former judgment in *habeas corpus*

31—74 KAN.

determining the custody of a child was *res judicata,* and the distinction between that and ordinary *habeas corpus* proceedings was recognized. The court used this language:

"After a careful examination of the authorities, we are inclined to the opinion that, in cases of this character, where the controversy arises over the custody of a child, the real issue is one between private parties contesting a question of private right, under the form of *habeas corpus* proceedings, in which there arises no question of personal liberty, and in consequence all matters in issue arising upon the same state of facts determined in the prior proceeding should be regarded as settled and concluded." (Page 756.)

It is said in volume 1 of the fourth edition of Freeman on Judgments, section 324:

"The principle of *res judicata* is also applicable to proceedings on *habeas corpus,* so far at least as they involve an inquiry into and a determination of the rights of conflicting claimants to the custody of minor children. . . . The principles of public policy requiring the application of the doctrines of estoppel to judicial proceedings, in order to secure the repose of society, are as imperatively demanded in the cases of private individuals contesting private rights under the form of proceedings in *habeas corpus* as if the litigation were conducted in any other form."

The case of *In re King, supra,* is not in conflict with this, nor with the doctrine of *In re Hamilton, supra.* It merely adds the modification that this court will consider the best interest of the child as always paramount to the rights of contending claimants, and will not be bound by the hard and fast rule adopted by some courts to the effect that it must first be made to appear that a change in the conditions surrounding the child has occurred since the former adjudication.

A well-considered case directly in point is *The State, Baird, pros., v. Baird and Torrey,* 19 N. J. Eq. 481. There it was decided that an appeal in such a case will lie notwithstanding the proceedings were by *habeas*

Bleakley v. Smart.

*corpus;* that while in technical strictness the office of the writ is simply to remove unlawful restraint, and where this is the only purpose the right to appeal is a debatable question, still in *habeas corpus* for the custody of a child the petition takes a wider scope and invokes the exercise of that power of the court which is *quasi*-parental. It was held that the court in such a case acts under its general jurisdiction of the affairs of infants, and not by force of its more limited jurisdiction by proceedings in *habeas corpus.* (See, also, *In re Mary B. Sneden,* 105 Mich. 61, 62 N. W. 1009, 55 Am. St. Rep. 435; 9 Encyc. Pl. & Pr. 1071, 1072; 15 A. & E. Encycl. of L. 213; 5 Cur. Law, 1619; *Mahon v. The People,* 218 Ill. 171, 75 N. E. 768; *Cormack v. Marshall,* 211 Ill. 519, 71 N. E. 1077, 67 L. R. A. 787; *People ex rel. Lawrence v. Brady,* 56 N. Y. 182; *The People v. Court of Appeals,* 27 Colo. 405, 61 Pac. 592, 51 L. R. A. 105.) In the last-named case the Colorado court said:

"Whatever may be the rule in this regard applicable to the usual judgment in *habeas corpus* discharging a party from illegal imprisonment, we think that in a case where the controversy involves the right to the custody of an infant, although the writ of *habeas corpus* is used to determine that right, it is nevertheless a civil suit, and the judgment rendered being a final adjudication in regard to such custody, it is clearly reviewable by the court of appeals, under the statute creating that court." (Page 409.)

Some of the authorities cited *supra* are based upon the conclusiveness of the former decision, proceeding upon the theory that the appealability depends entirely upon whether the former judgment is *res judicata.* But it is not the rule that to constitute a final judgment for the purposes of appeal it must be a bar to another suit. At common law in the court of king's bench a final judgment did not mean a final determination of the rights of the parties, but final merely as to the particular suit. The same construction of the meaning of the term "final judgment" has been adopted by the

supreme court of the United States in *Weston et al. v. The City Council of Charleston*, 27 U. S. 449, 7 L. Ed. 481. To the same effect see *Colorado.Eastern Ry. Co. v. Union Pac. Ry. Co.*, 94 Fed. 312, 36 C. C. A. 263. A judgment in forcible entry and detainer cannot be pleaded as a bar to another action by either party, but it is, nevertheless, a final judgment from which an appeal will lie. (*Redden v. Tefft*, 48 Kan. 302, 29 Pac. 157.) And many other orders and judgments which are not *res judicata* are final for the purposes of appeal.

Another quite pertinent consideration suggests itself, which is: whether the judgment was or was not an appealable one, this court by granting a· stay of proceedings assumed to have jurisdiction, and, until ultimately decided by this court to the contrary, it is appealable so far as that question concerns or affects this proceeding. We hold, however; that the judgment of the district court is one from which an appeal will lie.

The effect of the Illinois judgment is manifestly not involved in this proceeding. and therefore nothing said herein in reference to the conclusiveness of such judgments is decisive of that question.

(2) Plaintiff in her petition for this writ of mandamus, after reciting the proceedings below, says:

"Thereupon Mrs. Bleakley, intending no disrespect to the court, but feeling that her rights had not been respected and that the court had arbitrarily deprived her of.her right to give bond to stay execution, which bond she could give in any sum which a court could reasonably require, and fearing that the illegal act of the court might cause her to lose her baby, she took the train to Moline, Ill., the home of the relators in the Kansas suit, and is now an exile from Kansas and her home resting securely in the possession of her child under the laws of Illinois and under the protection of its courts."

Beyond any question she was guilty of contempt in removing the subject of controversy from the jurisdiction of the court. It is urged by her counsel that she was to some extent justified in her conduct by the

action of the court in refusing to grant her a stay of execution. Her application to be permitted to give a stay bond was made twice, once immediately after the judgment was rendered, and again after the motion for a new trial had been by the court continued to the next term. Both of these applications were made under the provisions of section 1 of chapter 322 of the Laws of 1905, which reads as follows:

"That after the rendition of a judgment or decree in any civil action in any of the district courts of the state of Kansas, that upon the execution of a good and sufficient bond, to be approved by the court, by the party or parties against whom such judgment or decree may be rendered, it shall be the duty of such court to stay execution or order of sale upon such judgment or decree for a reasonable length of time, for the purpose of allowing such party or parties against whom such judgment or decree may be rendered to file proceedings in the supreme court of Kansas to reverse, vacate or modify such judgment or decree."

Aside from any express statutory provision, it is generally the policy of the courts to preserve the *status quo* of the parties pending an appeal upon proper security being given, when that may be done without manifestly defeating the ends of justice. This statute, however, declares in positive terms that it shall be the duty of the court to grant the stay. It gives a party situated as was the plaintiff when the judgment was rendered a right which depends in no respect upon the discretion of the court. Counsel for defendant suggest a supposed case in *habeas corpus* for the custody of a young girl, where it might be clearly established that the defeated party intended to keep her for the purpose of prostitution, and it is argued that to permit him under such circumstances to stay proceedings on the judgment would defeat the ends of justice. It is sufficient to say that our *habeas corpus* act makes express provision by which the court or judge may make such order for the temporary custody of the person as justice may require; and, in the absence of such pro-

vision by statute, the court would have inherent power in a case like the one supposed.

The learned judge of the trial court must have misconceived the force and effect of chapter 322 of the Laws of 1905 in refusing to permit Mrs. Bleakley to give a bond and stay proceedings. Nothing in the findings of the court seems to warrant the inference that there was any special necessity for placing the child in the possession and control of the Barclays pending the final determination of the rights of the parties. The $4000 bond which the court required of the successful party was one for which no express provision is made by statute, and changed the status of the parties. Conditions might exist which would authorize a court to require such a bond, but the one which Mrs. Bleakley asked to be permitted to give is expressly provided for by statute, and preserved the *status quo*. Her application should have been granted and the proceedings stayed. When this court granted a stay of further proceedings on the judgment she was no longer in continuous contempt in failing to return with the child, because the district court no longer had power to enforce the judgment or jurisdiction to act in the case further than to pass upon the motion for a new trial. Our action in superseding the judgment did not in any sense relieve her from the charge of, or penalty for, her previous contempt; but, as observed, over that we have no jurisdiction. In order to complete the record for review by this court it became at once the duty of the court below to rule upon the motion for a new trial by either granting or denying it.

This is all that is directly involved in the proceeding. The writ will therefore issue, directing defendant to pass upon the motion for a new trial.

All the Justices concurring.