Charlotte E. Bleakley v. James G. Barclay *et ux.*

No. 14,866    (89 Pac. 906.)

SYLLABUS BY THE COURT.

1. Judgments—*Impeachment by a Party—Collateral Proceeding.* A party to a judgment cannot impeach or set it aside in a collateral proceeding on the ground that it was obtained by perjured testimony.

2. —————— *Res Judicata.* Upon a plea of former adjudication a matter will be held *res judicata,* although not raised as an issue by the pleadings in the former action, if from the record it appears that it formed one of the premises upon which the judgment necessarily rested.

3. —————— *Habeas Corpus—Custody of a Child.* Where the rights of conflicting claimants to the custody of a child are involved and determined in *habeas corpus* proceedings the judgment is binding and conclusive, and bars subsequent proceedings by a party thereto upon the same state of facts.

4. Constitutional Law—*Foreign Judgment—Full Faith and Credit.* A judgment rendered by a superior court of another state having jurisdiction of the parties and the subject-matter will be given in this state the same faith and credit to which it is entitled in the state where it was rendered.

5. —————— *Res Judicata.* A judgment rendered in the circuit court of Illinois in *habeas corpus* for the custody of a child is *res judicata* and cannot be questioned by a party thereto in subsequent proceedings brought in a court in this state upon the same state of facts.

6. Practice, Supreme Court—*Review of Ruling on a Motion to Quash.* A motion to quash the writ in *habeas corpus* amounts to a demurrer, and if denied and excepted to any error in the ruling may be urged on appeal, although issues were joined and trial had, provided the proceeding is one which is appealable.

Error from Douglas district court; Charles A. Smart, judge. Opinion filed April 6, 1907. Reversed.

STATEMENT.

This appeal from a judgment of the district court in *habeas corpus* for the possession of a child involves the merits of the "incubator baby case." A part of the

controversy was before the court in *Bleakley v. Smart,* 74 Kan. 476, 87 Pac. 76. That was an action of mandamus to compel the trial judge to rule upon a motion for a new trial. The motion having been denied, the respondent brings the case here for review.

Some of the history of the case is set forth in the recital of facts in the mandamus case, which, however, it is necessary to supplement. James G. Barclay and Stella Barclay, the petitioners, are husband and wife. Their petition, which was filed in the district court of Douglas county September 5, 1905, alleged that Charlotte E. Bleakley had recovered the child from them by means of a former *habeas corpus* proceeding in Illinois, and that the judgment in that action was obtained through the perjury and fraud of witnesses. The Barclays asked for the return of the child. There was no statement in the petition that there was any change in the conditions or circumstances affecting the child, that the Illinois judgment had been reversed, or that it was not in full force and effect. The principal parts of the petition follow:

"Come now your petitioners, James G. Barclay and Stella Barclay, and respectfully show that they are citizens of the county of Rock Island and state of Illinois, and are husband and wife; that one Edith Stanley, born at St. Louis, in the state of Missouri, on the first day of March, A. D. 1904, is unlawfully restrained of her liberty by one Charlotte E. Bleakley, in the city of Lawrence, Douglas county, Kansas; . . . that the said Edith Stanley is unlawfully restrained of her liberty, according to the best of the knowledge and belief of these applicants, by reason of a judgment of the circuit court of the county of Rock Island and the state of Illinois, which judgment was obtained by the said Charlotte E. Bleakley on account of her falsely and fraudulently pretending and swearing to be the true mother of the said Edith Stanley; . . . that up to the time of the filing of a certain petition in *habeas corpus* by the said Charlotte E. Bleakley, on or about the 26th of May, 1905, there was no person who knew that said child was not born unto your petitioners except the parties aforesaid, and that up until that time

the said Charlotte E. Bleakley paid no attention to said child, neither did she have the same in her care or custody; that shortly thereafter, and on or about the 26th day of May, 1905, a writ of *habeas corpus* was issued out of the circuit court of Rock Island county, Illinois, and certain proceedings had in reference thereto in which the said Charlotte E. Bleakley was the petitioner and the said petitioners hereto were respondents, and the determination thereof was in substance and effect that the said Charlotte E. Bleakley was entitled to the possession of the said child, Edith Stanley, said decision being based upon the determination by said court that the deed of adoption aforesaid was illegal and void; that after the rendition of said judgment, and shortly before the making of this application, these petitioners, for the first time, learned that the absolute truth in reference to the parentage of said child was that it was not the offspring of the said Charlotte E. Bleakley. . . . Your petitioners further aver and show to the court that the said Charlotte E. Bleakley well knew that the said child so born to her was dead at the time of its birth, and well knew that the said infant, Edith Stanley, was not her child at the date of the filing of her said application for a writ of *habeas corpus,* and that the said child, Edith Stanley, was the child of some other woman; that all of said facts were known by the said Charlotte E. Bleakley during all of the trial of the aforesaid application for the custody of said infant, at which time the said Charlotte E. Bleakley well knew that your petitioners were ignorant of the true parents of the said child; . . . and that she is guilty of the crime of perjury in that she testified in a court of competent jurisdiction under oath that she was the mother of said child, Edith, when as a matter of fact she then and there knew that such was not the case. . . . These petitioners direct the court's attention to the fact that circumstances are here presented unknown to the said circuit court of Rock Island county and unknown to these petitioners at the time of the hearing upon said writ of *habeas corpus* in Rock Island county, to wit, that the child is not the child of Charlotte E. Bleakley, as was then and there believed by all of the parties interested and by the court, except the said Charlotte E. Bleakley. . . . Wherefore, your petitioners pray that a writ of *habeas corpus* be issued."

Mrs. Bleakley filed a motion to quash the writ on the grounds: (1) That the petition failed to state facts sufficient to constitute a cause of action; (2) that the matter was *res judicata,* and the Illinois judgment could not be collaterally attacked; (3) that under the federal constitution full faith and credit must be given to the Illinois judgment; (4) that the Illinois judgment had, by finding that Mrs. Bleakley was the mother of the child, settled the controversy; (5) that the petition failed to allege any change in the condition of the child or its surroundings since the rendition of the judgment in Illinois. The motion to quash was denied. Respondent then pleaded a complete transcript of the record of the proceedings in Illinois, and denied the other allegations of the writ.

A reply was filed by the Barclays, in which it was alleged that the judgment in Illinois was obtained by fraud and perjury, and that on the trial of the case the question of motherhood was not raised; also that the question whether Mrs. Bleakley was a fit and proper person to have the custody of the child was not raised. It was alleged that the portion of the Illinois judgment wherein the court found the respondent to be the mother of the child was absolutely void and illegal, for the reason that the parentage of the child was not an issue, and the only issue before the court was whether or not a certain deed of adoption was legal or illegal. It should be stated that the Barclays in their defense to the writ in the Illinois suit based their claim of right to the possession of the child upon a deed of adoption executed by Charlotte E. Bleakley as the child's mother.

Upon the settlement of the issues the case was tried before the Honorable Charles A. Smart, at the January, 1906, term of court. An objection to the introduction of any testimony was overruled.

At the conclusion of the trial, which occupied several days, the court rendered judgment for the petitioners: that the respondent is not the mother of the child, that

30—75 KAN.

the petitioners are entitled to its custody, and that the child's best interests require that it be given into their keeping. The judgment ordered that the possession of the child be given to the Barclays immediately upon their executing a bond in the sum of $4000, conditioned that they would produce the child within the court's jurisdiction in case the judgment was reversed, vacated or modified by the trial court or by the supreme court.

The respondent prosecutes this proceeding, and assigns the following errors: (1) Denying the motion to quash the writ; (2) refusing to give full faith and credit to the Illinois judgment, as required by section 1 of article 4 of the constitution of the United States; (3) permitting the Illinois judgment to be collaterally impeached; (4) permitting testimony to be introduced under the petition.

*E. F. Ware, J. Q. A. Norton,* and *W. B. Brownell,* for plaintiff in error.

*John H. Atwood,* and *Bishop & Mitchell,* for defendants in error.

The opinion of the court was delivered by

PORTER, J.: Before considering the errors assigned some additional facts in the history of the case should be noted.

From the transcript of the proceedings in Illinois it appears that the petition there was filed on May 26, 1905. At that time the child, Edith, was fifteen months old. It also appears that the Barclays, who were temporarily residing in St. Louis during the exposition in 1904, where James G. Barclay was in charge of an exhibit, first saw the child at the baby-incubator concession. They learned that it had been placed in charge of the incubator people in the month of April, 1904, under the name of Edith Brown, by a midwife in St. Louis. They were informed by this midwife that Charlotte E. Bleakley, who resided in Lawrence, Kan.,

was the mother of the child, and that it was born February 15, 1904.   They procured the assistance of an attorney to secure adoption papers.   The following excerpt from the opinion of Judge Graves, based upon the evidence in the Illinois case, is also pertinent:

"In this case the testimony shows that the mother, driven desperate by the attempts of her husband to destroy the life of the unborn child, which conduct had been persisted in and was still being persisted in to the extent that the mother feared that her own life would pay the penalty of such unnatural opposition on the part of the father to the birth of an heir, left her home in Lawrence, Kan., made her way to the city of St. Louis, where after the lapse of a short time she gave premature birth to a child.   Whether the premature birth was in fact the result of the means adopted by her husband to destroy it at an earlier date the evidence does not disclose; but, in any event, the child was born prematurely, and when coming out from under the influence of chloroform administered to the mother at that time *a child* was placed across her arm, and she was told that it was her child and that it was dead. She paid for its funeral expenses, including coffin and grave.   She afterward heard rumors that the midwife had said that her child was alive, and on investigation into the rumors by her brother the midwife again reiterated the fact that the child was dead; and, believing that statement to be true, after a lingering illness the mother returned to her home in Lawrence, Kan. Months afterward, and while she still believed her child was dead, she was approached and requested to sign a deed of adoption, which she was finally prevailed upon to do, upon the condition only that it should be placed in the hands of her father-in-law, to be taken by him to St. Louis, and not to be delivered by him until he had made full investigation, and, as she testifies, was not to be given up if the child sought to be adopted was in fact her child; and according to the testimony of the father-in-law it was not to be given up unless he *was satisfied* that it was not her child.   Whether or not the father-in-law acted in good faith there is nothing in this record to show; in any event, he delivered up the deed of, adoption to Mrs. Barclay, and returned to Lawrence, Kan., and reported to the mother, the relator in this case, that it was not her child but that the adop-

tion papers were merely a means by which Mr. and Mrs. Barclay were to be aided in rescuing from the hands of the midwife some child of unknown parentage. . . . She afterward became satisfied that the child in question was hers, and seeks to reclaim it and to revoke all such part as she took in the means by which the custody of that child was surrendered to the Barclays. Nobody has challenged the fact that at the time she wrote those letters and signed this so-called deed of adoption she honestly and *bona fide* believed that her child was dead, and truly believed the statement she swore to as to the reason why she signed that paper and wrote those letters.

"It seems to me if there ever was a case in which the terms of the contract ought not to be enforced against a natural parent this is the case, and that, too, even though the authorities were believed to support the making of enforceable contracts of that character. . . . The relator, I am satisfied, is the mother of the child. Her child was born on the 15th day of February, in the house of the midwife, Mrs. Merrifield, in St. Louis, Mo. This child was born on that day in that house. The daughter of the relator was tiny and blonde; this child was the same. Her child was of premature birth; so was this child. Some expert testimony was offered in this case on the question whether a child of six months' gestation could live outside of an incubator; and it has been urged from that testimony that this is not the child of the relator, but it must be borne in mind that there is no evidence whether the child of the relator was of six months' gestation or more. Mrs. Merrifield told the relator her child was dead; she told Dr. Burford it was alive; she told Mr. Thompson it was dead. She put this child in charge of the managers of the incubator company at the World's Fair, and told those people it was the child of the relator; she told Mrs. Barclay the child was the relator's, and where the relator lived."

The various assignments of error are all predicated upon the force and effect of the Illinois judgment. If that judgment is *res judicata* the motion to quash should have been allowed, provided it sufficiently appeared by the petition for the writ that a court of competent jurisdiction had decided the cause of action

adversely to the petitioners.    Obviously the petition
was drawn upon the theory that the averments to the
effect that the Illinois judgment was obtained by
means of perjured testimony permitted a collateral at-
tack upon the judgment.    It recites the name of the
Illinois court and declares that it is a court of com-
petent jurisdiction; it alleges that the respondent ob-
tained a judgment of that court awarding her the
custody of the child, and the only excuse alleged for
invoking the aid of the Kansas court is that the re-
spondent procured the judgment by false and perjured
testimony.    But fraud only inheres in the judgment
when it affects the jurisdiction; no other fraud can
be relied upon in a collateral attack.    It is conceded
that the Illinois court had jurisdiction of the parties
and of the subject-matter.    Fraud is no ground for an
attack by a party to the judgment.    This is elemen-
tary.    Third parties may impeach a judgment collat-
erally, because they are not bound by it.

"Judgments of any court can be impeached by
strangers to them for fraud or collusion; but no judg-
ment can be impeached for fraud by a party or privy
to it."    (2 Freeman, Judg. § 334.    See, also, *Field et al.
v. Sanderson's Adm'x*, 34 Mo. 542, 86 Am. Dec. 124;
*Greene v. Greene*, 68 Mass. 361, 61 Am. Dec. 454;
*El Capitan Land & Cattle Co. v. Lees* [N. M.], 86 Pac.
924.)

In *Peck v. Woodbridge*, 3 Day (Conn.) 30, false
testimony and forgery were alleged as grounds to im-
peach the former judgment, but the foregoing rule
was enforced because it was said to be necessary to
the administration of justice that when a case is once
finally decided it must be held to end the litigation
between the parties.    The consequences of permitting
such an attack are apparent when we consider that
if the Barclays could, in this proceeding, set aside the
former judgment for the reason that it was obtained
by means of perjured testimony, it must follow that
the respondent would be entitled in still another pro-

ceeding to set up the same grounds to defeat the judgment in this.

"The parties to an action cannot impeach or set at naught the judgment in any collateral proceeding on the ground that it was obtained through fraud or collusion. It is their business to see that it is not so obtained." (2 Freeman, Judg., § 334. See, also, *Dilling v. Murray,* 6 Ind. 324, 63 Am. Dec. 385; *Boston and Worcester Railroad Corporation v. Sparhawk & Wife,* 83 Mass. 448, 79 Am. Dec. 751; *Pico v. Cohn,* 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, 13 L. R. A. 336, 25 Am. St. Rep. 159; *United States v. Throckmorton,* 98 U. S. 61, 25 L. Ed. 93.)

All courts are likely to be deceived by perjured testimony, and to permit a defeated party to go to another court—foreign or domestic—and procure a retrial of the same issues on the ground that the successful party had fraudulently procured the former judgment upon false testimony would make litigation endless and judgments as unsubstantial as the stuff that dreams are made of.

The respondent objected to the introduction of any testimony under the pleadings, on the ground that all the issues had been determined by the Illinois judgment. This was overruled, the court holding that the question of motherhood was not an issue in the former proceeding and that the only question involved was the validity of the deed of adoption. It is one of the principal contentions of the petitioners that the motherhood of the child was not an issue in the former proceeding, but was excluded therefrom by a ruling of the court in Illinois. It appears that the Barclays, after setting up the deed of adoption executed by Mrs. Bleakley as the mother, attempted in another allegation of the return to deny that she is the child's mother, and a motion to strike out the latter allegation as inconsistent with the former was allowed. It therefore becomes necessary to inquire whether the motherhood of this child was determined by the Illinois court. It is elementary that the judgment ren-

dered and not the opinion must be looked to in order to find the thing adjudged. The reasoning of the court forms no part of the judgment. (*Hopper v. Arnold,* 74 Kan. 250, 86 Pac. 469.) At the same time, the inquiry is not always confined to the formal issues as defined by the pleadings, nor to the formal parts of the judgment. In *Redden v. Metzger,* 46 Kan. 285, 289, 26 Pac. 689, 26 Am. St. Rep. 97, the following language from *Burlen v. Shannon,* 99 Mass. 200, 96 Am. Dec. 733, is quoted with approval:

"The estoppel is not confined to the judgment, but extends to all facts involved in it as necessary steps or the groundwork upon which it must have been founded. It is allowable to reason back from a judgment to the basis on which it stands, 'upon the obvious principle that, where a conclusion is indisputable and could have been drawn only from certain premises, the premises are equally indisputable with the conclusion.' " (See, also, *Bank v. Rude, Adm'x,* 23 Kan. 143; *Whitaker v. Hawley,* 30 Kan. 317, 1 Pac. 508; *Shepard v. Stockham,* 45 Kan. 244, 25 Pac. 559.)

Mrs. Bleakley's petition for the writ alleged that she was the child's mother. The return and answer alleged that as the mother she had executed a deed of adoption. The court, by striking out as inconsistent the allegation that she was not the mother, held that the other allegations admitted the contrary to be true. At the close of the evidence the Barclays filed a motion for judgment, on the ground, among others, that "it is not shown that the said infant is the child of the relator," recognizing clearly that the motherhood of the child was involved as a primary fact. The court denied this motion, and after holding the deed of adoption void for the reason that it did not conform to the laws in relation to the adoption of children in force in Illinois, where the Barclays resided when they executed it, nor to those in force in Missouri, where the child was at the time, nor to the laws of Kansas, where the mother of the child resided when she exe-

cuted it, also made as a part of the judgment the following:

"The court further finds that the said Edith Bleakley is the daughter of the said Charlotte E. Bleakley and J. J. Bleakley, and that she was born on the 15th day of February, A. D. 1904."

It is said in volume 2 of the second edition of Black on Judgments, section 614:

"The doctrine of *res judicata* does not rest upon the fact that a particular proposition has been affirmed and denied in the pleadings, but upon the fact that it has been fully and fairly investigated and tried —that the parties have had an adequate opportunity to say and prove all that they can in relation to it, that the minds of court and jury have been brought to bear upon it, and so it has been solemnly and finally adjudicated. . . . For these reasons, the more correct doctrine is that the estoppel covers the point which was actually litigated, and which actually determined the verdict or finding, whether it was statedly and technically in issue or not."

How can it be said that the fact that respondent is the mother was not essential to that part of the judgment holding the deed of adoption void because it failed to comply with the laws of Kansas, where the mother of the child resided, or that, in determining the invalidity of the deed, the mind of the court was not brought to bear upon it so that it has been judicially decided? In addition, there is the adjudication in the judgment itself that Mrs. Bleakley is the child's mother. True, it was not presented by the pleadings as an issue in the sense of being affirmed on the one side and denied on the other, for the Barclays admitted it by seeking to establish their claims upon the basis of its truth. They claimed through and under Mrs. Bleakley as the mother, and cannot now, after submitting their claims upon that theory, be permitted to set up the contrary.

"It is not necessary to the conclusiveness of the former judgment that issue should have been taken

upon the precise point which it is proposed to contro-
vert in the collateral action.    It is sufficient if that
point was essential to the former judgment."    (*Lee v.
Kingsbury*, 13 Tex. 68, 71, 62 Am. Dec. 546.)

The contention of the Barclays that the deed of
adoption was valid could only have been sustained
upon the theory that it was executed by the mother.
On the other hand, the judgment in favor of Mrs.
Bleakley could not have been rested upon any other
ground than that her claim to be the child's mother
was found by the court to be true.    Within the rule
approved in *Redden v. Metzger*, 46 Kan. 285, 26 Pac.
689, 26 Am. St. Rep. 97, it is apparent that by rea-
soning back from the judgment to the basis on which
it stands we find the judgment could only be based
upon the premise of motherhood, and this premise is
as much a thing adjudicated as the conclusion itself.
We have no hesitation in reaching the conclusion that
the question of motherhood was inseparably inter-
woven with the proceedings in Illinois and was judi-
cially determined therein.    The action of that court
in allowing the motion to strike out inconsistent al-
legations in the return did not have the effect which
is now claimed.    The ground upon which relief is
sought in this proceeding is that Mrs. Bleakley pro-
cured that judgment by falsely swearing to a fact
which it is now said was never in issue.

The petitioners contend that the decree of the
Illinois court did not deprive the Kansas court of
jurisdiction to hear and determine another *habeas
corpus* proceeding, for the reason that the record dis-
closes a change in the situation and conditions sur-
rounding the child from what was disclosed to the
Illinois court.    The changed conditions which it is
argued are sufficient to warrant the interference of
the Kansas court are said to consist of certain facts
which it is urged are disclosed for the first time upon
the trial of this case, and which it is claimed establish
beyond question that the respondent is a perjurer and

an abortionist, and therefore morally unfit to have the custody of the child. These facts, it is argued, make it the solemn duty of the Kansas courts to take the child from her and give it to the petitioners. The charge of perjury is based upon the claim that she is not the child's mother, and that therefore her testimony in Illinois was false.

The respondent brings up none of the evidence, and, while it is true that the petitioners are entitled to every presumption that the evidence was sufficient to support the judgment, that presumption only goes to the extent of covering such facts as the pleadings would warrant evidence upon. There is no inference from the judgment that there was evidence that Mrs. Bleakley is or ever was an abortionist. We would have as much right to infer from the judgment that she was an ex-convict or a shoplifter; for there is no word or charge in the pleadings intimating that she is or ever has been guilty of any immoral conduct, except the allegation that on the former trial she committed perjury. It must be observed that even this charge was not made for the purpose of showing a change in the conditions surrounding the child, but solely for the purpose of furnishing grounds upon which to attack the validity of the former judgment. If Mrs. Bleakley is the mother, then she was not guilty of perjury or abortion; so that the charges of immorality are interwoven with the question whether in fact she is the mother, which we have seen was decided in her favor.

But there is a stronger reason why this contention of petitioners must fail. The petition is not predicated in any sense upon a change in the situation or conditions surrounding the infant. It is silent with respect to all such matters. To permit the petitioners to bring an action of this character, based upon one theory, and, failing thereon, to obtain a decree awarding them the custody upon a finding of the court that the welfare and best interests of the child require it,

Bleakley v. Barclay.

lacks the elements of fairness and equity and encour-
ages suits in the nature of reprisals.

In awarding the custody of this child to the woman
he believed from the evidence to be its mother the
learned judge who presided in the Illinois case was not
unmindful of the grave responsibilities which always
rest upon the chancellor in deciding questions of this
character. It requires no reading between the lines
to discover that the welfare and best interests of the
little child were held above the rights of the conflicting
claimants, and kept constantly in view. The opinion
itself sparkles with feeling and with expression of
paternal affection and tenderness for helpless children.
At one place the judge observed that if it were pos-
sible he would take the child from both contestants
and keep it himself. We quote further from the
opinion:

"In determining this case I am not unmindful that
whatever may be said or done in the performance of
this duty must of necessity entail upon one side or
the other the deepest anguish. The love of children
is one of the few divine attributes possessed by the
human race; the man or woman who is without it
is abnormal; those who have once known it have been
made partakers to a degree of the joys of the world
to come, and those who have had the object of that
love torn from their arms by the bony hand of fate
have truly felt the fire unquenchable. It is only those
who have never experienced the love of children who
can perform a duty like the one here presented with-
out the deepest regret, appreciating how sore the
wound will be that of necessity must be inflicted.

"But this case cannot be decided upon sympathy.
The law, as applied to the facts, as I am able to under-
stand both, must govern. . . . Believing as I do
that the deed of adoption has no legal binding force
or effect, either in this or any other state, and that
contracts for the surrender by the natural parents
to strangers of the custody of minor children are not
sanctioned by the weight of authority in this country,
and that in this particular case the contract itself
ought not, as a matter of right, to be enforced, there
remains but one thing to determine, and that is:

What is for the best interest of this child? Should it be allowed to remain in the custody of the respondents? Or, should it be turned over to the custody of the mother? . . . So far as is shown by the evidence, there is no considerable difference between the relator and the respondents, either in the matter of morals, education or social or financial standing; each express, and I have no doubt entertain, great affection for the child."

The judgment finds that Mrs. Bleakley is a fit and proper person to have the care of the child and as its mother is entitled thereto, and awards her its custody.

Having determined that the former judgment cannot be attacked on the ground of fraud in obtaining it by means of false testimony, that the question of the motherhood of the child was determined by that judgment, and that the judgment also found Mrs. Bleakley to be a suitable person to have, and that she is entitled to, the child's custody, there remains the single question, What effect shall be given here to that judgment? This question can have but one answer. Section 1 of article 4 of the constitution of the United States requires that full faith and credit be given to the judgments of sister states. This court will take judicial notice that the circuit court of Illinois is a superior court of general original jurisdiction. (*Butcher v. The Bank of Brownsville*, 2 Kan. 70, 83 Am. Dec. 446; *Dodge v. Coffin*, 15 Kan. 277; *Poll v. Hicks*, 67 Kan. 191, 72 Pac. 847.) A judgment of a superior court of one state must be given the same effect in all respects in another state as in the state where it was rendered. (*Barnes & Drake v. Gibbs et al.*, 31 N. J. Law, 317, 86 Am. Dec. 210; *Cook v. Thornhill*, 13 Tex. 293, 65 Am. Dec. 63; *Bank of North America v. Wheeler*, 28 Conn. 433, 73 Am. Dec. 683; *Ambler v. Whipple*, 139 Ill. 311, 28 N. E. 841, 32 Am. St. Rep. 202, and note; *Welch et al. v. Sykes*, 8 Ill. 197, 44 Am. Dec. 689; *Renaud v. Abbott*, 116 U. S. 277, 6 Sup. Ct. 1194, 29 L. Ed. 629.) The full faith and credit which must be given is the same faith

and credit accorded the judgment in the state where it was recorded. In the recent case of *Haddock v. Haddock,* 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, it was said:

"The requirement of the constitution is not that some, but that full, faith and credit shall be given by states to the judicial decrees of other states. That is to say, where a decree rendered in one state is embraced by the full faith and credit clause that constitutional provision commands that the other states shall give to the decree the force and effect to which it was entitled in the state where rendered. *Harding v. Harding,* 198 U. S. 317, 25 Sup. Ct. 679, 49 L. Ed. 1066." (Page 567.)

A judgment of a sister state rendered by a court of competent jurisdiction having jurisdiction of the parties and the subject-matter will be given in this state the same force and effect to which it is entitled in the state where it was rendered. In the absence of proof as to the force and effect which the former judgment would be entitled to receive in the courts of Illinois we assume that the law there is the same as here. Here the judgment would be *res judicata.*

When this case was before the court in *Bleakley v. Smart,* 74 Kan. 476, 87 Pac. 76, the question was whether a judgment in *habeas corpus* for the custody of a child is appealable; and it was held that an appeal will lie, and incidentally that a judgment in a proceeding of this kind is *res judicata.* The petitioners contend, however, that a judgment in *habeas corpus* for the custody of a child is not *res judicata,* and rely upon the case of *In re King,* 66 Kan. 695, 72 Pac. 263, 67 L. R. A. 783, 97 Am. St. Rep. 399. In *Bleakley v. Smart, supra,* it was said, however, that the decision in *In re King* is not in conflict with the doctrine declared in the case of *In re Hamilton,* 66 Kan. 754, 71 Pac. 817, nor opposed to the following statement of the law in volume 1 of the fourth edition of Freeman on Judgments, section 324:

"The principle of *res judicata* is also applicable to

proceedings on *habeas corpus,* so far at least as they involve an inquiry into and a determination of the rights, of conflicting claimants to the custody of minor children."

We are satisfied that the weight of authority and sound reasoning supports the doctrine that where the rights of conflicting claimants to the custody of a child are involved and determined in *habeas corpus* proceedings the judgment is binding and conclusive, and bars subsequent proceedings by the same parties upon the same state of facts. (To the same effect see *Cormack v. Marshall,* 211 Ill. 519, 71 N. E. 1077, 67 L. R. A. 787, and *Mahon v. The People,* 218 Ill. 171, 75 N. E. 768.) The trial court erred in refusing to give to the Illinois judgment the faith and credit required by the constitution and the laws made in pursuance thereof.

Two minor contentions of petitioners will be noticed. The first is that after issues have been fully joined and judgment has been rendered on a trial a party cannot be heard to urge in this court on appeal error in denying a motion to quash. A motion to quash amounts to the same thing as a demurrer to the petition. The first two authorities cited by petitioners, *U. P. Rly. Co. v. Estes,* 37 Kan. 229, 15 Pac. 157, and *Goodrich v. Comm'rs of Atchison Co.,* 47 Kan. 355, 27 Pac. 1006, 18 L. R. A. 113, expressly decide that where a demurrer to a petition is overruled the defendant may save his exceptions, answer, raise the same defense by objection to the reception of evidence, and, if this be overruled, except, and, in this court on appeal, question the error in either ruling. The other case cited, *Bank of Santa Fe v. Haskell Co. Bank,* 54 Kan. 375, 38 Pac. 485, is not in point.

It is also urged that since the record does not contain the evidence error cannot be predicated on the overruling of the demurrer to the evidence. This is of no consequence, because respondent raised all the

questions of law involved herein by the motion to quash and the objection to any evidence. The other assignment is merely stating in a different form that no evidence should have been received. It follows, therefore, that the respondent was entitled to judgment upon the motion to quash, and that no evidence was proper under the pleadings.

The judgment is reversed and the cause remanded, with directions to enter judgment for the respondent for costs.