No. 34,029

RALPH McNERGNEY, *Appellee*, v. W. H. HARRISON, *Appellant*.

(84 P. 2d 944)

Opinion filed December 10, 1938.

*Harry A. Lanning,* of Seneca, for the appellant.

*James L. Haley,* of Sabetha, *Orrillis E. Shultz* and *Stephen K. Owen,* both of St. Joseph, Mo., for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.:   This action was commenced in Nemaha county to recover upon a judgment rendered in favor of the plaintiff and against the defendant in Buchanan county, Missouri.

The principal question is whether the matter involved was *res judicata.*   The appellant states the question involved in the following language: "May fraud or imposition in the recovery of a judgment in a sister state be set up as an equitable defense to defeat a recovery upon said judgment?"

The defendant in this action brought a suit in Missouri against the plaintiff in this action to recover on a note given by McNergney to Harrison for $1,000.   He got personal service on McNergney in Buchanan county, Missouri, and McNergney filed an answer and cross petition alleging the connection of Harrison with the Citizens State Bank of Sabetha, which in the early part of 1928 claimed to hold a note for $3,200 given to the bank by the mother of McNergney, for which note, through threats of the bank, McNergney, believing the same to be genuine, gave his own note for $3,200 and saw the alleged note given by his mother torn up.   He further al-

leged that from time to time he reduced the $3,200 to $1,000, and at that time gave to Harrison a note for $1,000, having paid on the original and the second note the total sum of $2,500; that thereafter McNergney learned for the first time that the pretended note of his mother was forged and was without consideration, and that she had never been indebted to the bank, and that such forgery was known to Harrison, and that McNergney thereafter refused to make any further payments on the note. For a second count or cross petition McNergney alleged that Harrison had fraudulently and unlawfully, as the holder of the note, received from him the sum of $2,500, and prayed that Harrison take nothing by the action, and that he, McNergney, recover the $2,500 he had paid on the notes.

No reply was filed to this answer and cross petition, but the case was continued two or three times, and when attorneys for Harrison asked for further continuance, which was opposed by McNergney and denied by the court, the attorneys for Harrison dismissed the action and withdrew therefrom, and judgment was rendered, on February 24, 1937, for McNergney by default. Later the same day evidence was introduced by McNergney, in the absence of attorneys for Harrison and in the absence of Harrison, and judgment was rendered thereon to the effect that Harrison take nothing and McNergney recover judgment against Harrison for $2,500, with interest and costs. Within four days thereafter Harrison, by his attorneys, filed a motion to set aside this judgment, alleging at length the poor health of Harrison and his wife, the distance he would have to travel from Bern, Kan., the inclement weather, and the bad roads which made it impossible for him to be present at St. Joseph on the day of the trial, and further setting out and alleging that he was not in any way connected with the Citizens State Bank of Sabetha, and that he purchased the note in question for the full face value in 1926, before its maturity, without any knowledge of any infirmities. He further alleged that the pleading upon which the court rendered judgment for McNergney on his counterclaim was insufficient to constitute a cause of action and that there was no competent evidence upon which the court could render a judgment for $2,500 against the plaintiff Harrison. He attached to the motion the affidavit of himself and wife setting forth therein the testimony given by the defendant, McNergney, at the hearing, which he alleged was perjury, and prayed to set aside the judgment dismissing his action and also the judgment rendered against him in favor of defendant McNerg-

ney. This motion to set aside the judgment was overruled by the circuit court of Buchanan county, in which the action was pending, and the plaintiff Harrison immediately appealed from the ruling to the Kansas City court of appeals, which latter court, in considering the appeal, stated:

"The question presented in the assignment of error and in points and authorities is, Did the court 'exercise an unfair discretion' in dismissing plaintiff's action and in overruling the motion to set aside the judgment on the counterclaim? Neither the assignment of error nor points and authorities challenge the sufficiency of the answer to the petition, nor the sufficiency of allegations of the counterclaim, nor the sufficiency of the evidence introduced in support of the counterclaim."

And the court concluded the consideration as follows:

"We must accept and consider the record as we find it. When thus considered, we cannot say the trial judge 'exercised an unfair discretion.'"

Thereafter McNergney brought this action in the district court of Nemaha county, Kansas, alleging at considerable length the details of the proceedings had in the circuit court of Buchanan county, Missouri, leading up to the judgment rendered in his favor therein, and the appeal therefrom to the Kansas City court of appeals, where the circuit court judgment was affirmed, and later the further appeal to the supreme court of the state of Missouri, where the writ of *certiorari* was by that court denied. He attached to his petition exhibits A, B, C, D and E, being, respectively, the petition in the Missouri court, the answer and cross petition in the Missouri court, the motion of Harrison to set aside the judgment in the Missouri court, the opinion of the Kansas City court of appeals, and the mandate of the Kansas City court of appeals.

The defendant Harrison filed an amended answer and cross petition in the case in Nemaha county, alleging the giving of the note for $3,200 by the plaintiff, McNergney; the reduction of the principal and the payment of interest thereon; the giving of the new note for $1,000 on April 1, 1930, and the payment of interest thereon, setting up a copy of the note as an exhibit; the failure of the plaintiff, McNergney, to pay interest thereon after April 1, 1934; the attempt of Harrison to collect the same from plaintiff in Nebraska; the filing of the action in Buchanan county, Missouri, in November, 1935, attaching a copy of the petition; the filing of an answer and cross petition thereto in Buchanan county by McNergney and attaching a copy thereof as an exhibit, and calling attention to the

fact that the signing, executing and delivering of the $1,000 note was admitted in McNergney's answer; reciting allegations contained in that answer with reference to the giving of the note as the result of fraud, misrepresentation, misunderstanding, collusion, connivance and other undue and illegal acts and things; that the note was not legal, no valid consideration being given for its execution and delivery, and then alleged in this answer and cross petition that all such allegations were false and untrue and were known to Mc-Nergney to be false and untrue and that there was a valid consideration for the execution and delivery of the note.

The answer and cross petition then recited and referred to the allegations in the cross petition of McNergney in the Missouri case concerning the bank, its officers and its failure, alleging that Harrison was a stockholder and director therein, also alleging conspiracy to defraud the mother of McNergney and the forging of her name to a $3,200 note and the delivery of that note to Harrison. It further alleged that all of said allegations were and are false and untrue, that there was no conspiracy to embezzle and no forgery as alleged by McNergney, that said answer of McNergney in the Missouri court did not contain sufficient allegations of fact to constitute a defense to that action in Missouri or a cause of action in favor of McNergney, and that the answer showed upon its face that if Mc-Nergney had any action whatever against Harrison it was barred by the statute of limitations, and that by reason thereof the circuit court of Buchanan county, Missouri, was without jurisdiction to render any judgment in said action against Harrison. The answer and cross petition gave the dates of the filing of the pleadings in the Missouri court and the continuance of the case, some of which continuances were requested by McNergney.

The answer and cross petition further alleged the ill health, age, sickness in the family, impassable roads and other reasons preventing the attendance of Harrison and his wife at the time the case was called for trial in Missouri; that the change of venue taken by Harrison to the other division of said court gave a continuance but not as long as usual or as expected; that the attorneys for McNergney refused to consent to a further continuance and the court refused to grant further continuance, which ruling is here alleged to be arbitrary and unjust, and that on account of the absence of Harrison his attorneys dismissed his petition and withdrew as attorneys in the cause and that the attorneys for McNergney stated to attor-

neys for Harrison that the claim of McNergney in the case would be taken up at a later date, upon which Harrison relied, but it was taken up the same day without notice to Harrison or his attorneys, and the evidence was submitted to the court by McNergney and judgment was rendered for him against Harrison. It is further alleged that in the hearing McNergney testified falsely and gave perjured testimony concerning the $3,200 note and the $1,000 note, whereas in truth and in fact defendant Harrison was not connected with the Citizens State Bank and never had any connection therewith.

The answer and cross petition further alleged that Harrison filed a motion in the Missouri court to set aside the judgment and grant him a new trial, but said motion was heard and arbitrarily and unjustly overruled, and he took an appeal to the Kansas City court of appeals, but the judgment was there affirmed. It is further alleged that Harrison had exhausted his legal remedies and has no adequate remedy at law, the said judgment rendered in Missouri against him being unjust, inequitable, unconscionable and void, and therefore McNergney should be enjoined and restrained from enforcing the same.

A second cause of action or cross petition realleged the facts and circumstances about the $1,000 note and prayed for judgment against McNergney for $1,060, with interest thereon from April 1, 1934.

The plaintiff, McNergney, then filed a demurrer to the amended answer and cross petition of the defendant Harrison, which answer and cross petition is detailed above. The demurrer, in addition to being general as to failure to state facts sufficient to constitute a cause of defense or action, raised the question of *res judicata*, want of jurisdiction, full faith and credit, the statute of limitations and estoppel. The trial court sustained the demurrer and rendered judgment for plaintiff, McNergney, against defendant, Harrison, for $2,500 and interest and costs. The defendant, Harrison, after the sustaining of the demurrer to his amended answer and cross petition, announced he would stand upon his pleadings, and served notice of appeal.

Appellant argues the following three questions involved:

"1. May fraud or imposition in the recovery of a judgment in a sister state be set up as an equitable defense to defeat a recovery upon said judgment?

"2. Does the appellant's amended answer allege and set forth facts constituting such extrinsic fraud and imposition in the recovery of the judgment

as will constitute an equitable defense to the appellee's suit upon the judgment?

"3. Does the appellant's amended cross petition, in conjunction with his amended answer, allege sufficient facts to constitute a valid cause of action in favor of the appellant and against the appellee upon the promissory note, as alleged and set forth in said amended answer and cross petition?"

Appellant argues on these questions that the defendant Harrison has never had his day in court, that accident, misfortune, absence of counsel and sickness make an equitable defense to give the defeated party a day in court, especially where it is alleged that fraud and imposition prevented one from having his day in court, citing the following Kansas cases, in addition to text authorities: *Plaster Co. v. Blue Rapids Township,* 81 Kan. 730, 106 Pac. 1079; *Huls v. Gafford Lumber & Grain Co.,* 120 Kan. 209, 243 Pac. 306; and *Bleakley v. Barclay,* 75 Kan. 462, 89 Pac. 906. The first case cited was where the trial court sustained a demurrer to the petition because the allegations thereof only went to the extent of asserting that the former judgment was based upon incompetent, false, fraudulent and untrue testimony, and the opinion in affirming the ruling on the demurrer makes the clear distinction between things occurring in the trial of the case and those outside, one being intrinsic and the other extrinsic, and held:

"The fraud which will authorize a court to vacate a judgment in an action brought for that purpose under section 570 of the code of civil procedure must be extrinsic or collateral to the matter involved in the former action, and sufficient to justify the conclusion that but for such fraud the result would have been different." (Syl. ¶ 2.)

The section 570 of the code, mentioned in the syllabus above quoted, is G. S. 1935, 60-3011.

The Huls case was one where an attempt was made by petition to obtain equitable rights for minors in a subsequent action where their interest in property had in a foreclosure action been lost by reason of the plaintiff, who was the material-lien party, getting the attorney for the guardian *ad litem* to sign a document used in the foreclosure action, and it was then alleged that the procuring of such signature was unfair and fraudulent. The court held in that case—

". . . that whatever fraud there was in the earlier action was intrinsic, not extrinsic, and consequently that judgment could only be corrected by appropriate supplemental proceedings in that case—by a motion for a new trial, or by a petition for a new trial, or by an appeal . . . ." (Syl. ¶ 1.)

In the last case above cited appellant quotes the following from a quotation from Black on Judgments used in the opinion:

" 'The doctrine of *res judicata* does not rest upon the fact that a particular proposition has been affirmed and denied in the pleadings, but upon the fact that it has been fully and fairly investigated and tried—that the parties have had an adequate opportunity to say and prove all that they can in relation to it.' " (p. 472.)

The conclusion reached in the case is expressed in the following paragraphs of the syllabus:

"A party to a judgment cannot impeach or set it aside in a collateral proceeding on the ground that it was obtained by perjured testimony.

"Upon a plea of former adjudication a matter will 'be held *res judicata,* although not raised as an issue by the pleadings in the former action, if from the record it appears that it formed one of the premises upon which the judgment necessarily rested.

"A judgment rendered by a superior court of another state having jurisdiction of the parties and the subject matter will be given in this state the same faith and credit to which it is entitled in the state where it was rendered." (Syl. ¶¶ 1, 2, 4.)

The fraud and imposition in the case at bar, relied upon by the appellant, is the unfair action of the Missouri trial court in refusing to grant a further continuance of the trial because of the age and infirmity of the plaintiff Harrison and members of his family, bad condition of the roads, and absence of his counsel. All these matters were before the Missouri trial court when it overruled the motion to set aside its ruling and judgment, and were intrinsic and not extrinsic. If the imposition of the ruling was fraud, it, like the matter of perjury or false swearing alleged to have been done in obtaining the judgment in Missouri, was before the trial court in Missouri and was not extrinsic or collateral fraud, and as said in the opinion in the Plaster Company case, *supra:*

"The general rule is that an act for which a court of equity will set aside or annul a judgment between the same parties, rendered by a court of competent jurisdiction, has relation to fraud extrinsic or collateral to the matter tried by the first court, not to fraud in the matter on which the judgment was rendered." (p. 735.)

It is said on this subject in 34 C. J. 467:

"Equity will refuse to interfere by injunction, when the grounds presented for its action have been already considered and held insufficient on a motion made in the trial court to open or vacate the judgment or for a new trial.

"A bill for an injunction cannot be maintained on the grounds which were presented and overruled on a motion for a continuance, or on the ground that the refusal to continue forced the party to trial at a disadvantage."

In the case of *Jackson v. Chesnut*, 151 Mo. App. 275, 131 S. W. 747, cited by appellant, it was held that accident and surprise were alone sufficient grounds for setting aside a judgment rendered, but the court took particular pains to say that there was no pretense of any fraud or unfair means taken in procuring the judgment, and an accident, preventing defense, unmixed with any fault or negligence of the party litigant, was the ground for relief.

It was held in *Potts v. West*, 124 Kan. 815, 262 Pac. 569, that—

"Fraud consisting in stating a fictitious cause of action and in supporting the stated cause of action by false testimony is intrinsic fraud." (Syl. ¶ 2.)

It was held in *Littlefield v. Paynter*, 111 Kan. 201, 206 Pac. 1114:

"A judgment of a sister state not challenged upon jurisdictional grounds cannot be impeached upon the ground that the successful party obtained the judgment by giving perjured testimony.

"The truth or falsity of the testimony produced was a matter for the determination of the court rendering the judgment, and that matter, not being extrinsic or collateral to the issue involved, must be regarded as adjudicated and not open to inquiry in another action.

"The demurrer to the defendant's pleadings setting up that the judgment was fraudulently obtained by perjured testimony was rightly sustained." (Syl. ¶¶ 1, 2, 3.)

In *Smolinsky v. Federal Reserve Life Ins. Co.*, 126 Kan. 506, 268 Pac. 830, it was held:

"Full faith and credit must be given to the judgment of a court of a sister state and the same effect in all respects as is given it in the state where it was rendered." (Syl. ¶ 3.)

We have no hesitancy in holding that the alleged accident, surprise, old age, ill health, family illness, absence of counsel and the alleged false testimony, resulting in the recovery of the Missouri judgment, were all intrinsic matters and not extrinsic, and therefore had already been considered and determined by the Missouri courts and were *res judicata*, and there were no new matters contained in the amended answer and cross petition in the case at bar which would make the case an exception to the full faith and credit rule as to judgments rendered in the courts of sister states. We think the demurrer to the amended answer and cross petition was properly sustained, and this extends to the cross petition, because the journal entry of the Missouri circuit court definitely stated "that the plaintiff take nothing by this petition."

The judgment is affirmed.