The State v. Tillotson.

---

THE STATE OF KANSAS, *Appellee*, v. FREEMAN H. TILLOTSON, *Appellant.*

No. 17,301.

SYLLABUS BY THE COURT.

1. KIDNAPPING—*Minor Child—Binding Force of Kansas Judgment—Foreign Judgment.* Where the right to the custody of a child is tried by a court of this state, and a judgment is rendered for one of the parties upon the ground that a judgment previously rendered in another state is controlling, the fact that such foreign judgment is subsequently reversed does

37—85 KAN.

not of itself affect the binding force of the Kansas judgment, which is conclusive upon the parties until it is set aside or superseded by a later judgment.

2. CUSTODY OF MINOR—*Judgment for Defendant for Costs Final on Merits of Case.* Where in an action for the custody of a child a decision is made that the defendant is entitled to retain the custody, a judgment rendered upon such decision for the defendant for costs is to be interpreted as a final judgment in favor of the defendant upon the merits.

3. *Kidnapping from Lawful Custodian of Minor Constitutes the Crime.* In a prosecution under the statute making it an offense to carry away a child with intent to detain it from its parent or other person having the lawful charge of it, where the information alleges that the defendant took the child with the intent to conceal it from a person who was its mother and also had lawful charge of it, and the evidence conclusively establishes that the person named was lawfully entitled to the custody of the child, the question whether she is also its mother becomes immaterial.

4. *Kidnapping Minor under Claim of Right—No Defense.* Where a child is living with the person to whom its custody has been awarded by the judgment of a court, and an armed man, employed for the purpose in the interest of the opposing claimant, enters the home and carries the child away by force and violence, in a prosecution of one who under a similar employment aided in the abduction, it is not error to refuse to instruct that proof that the child was taken under a claim of right resting upon reasonable grounds would constitute a defense, notwithstanding the judgment referred to was based upon an earlier judgment which had since been set aside.

5. *"Lottie" a Diminutive of "Charlotte."* In a prosecution for kidnapping, evidence that the person in charge of the child was Charlotte Bleakley is sufficient to sustain an allegation that the name of such person was Lottie Bleakley.

Appeal from Jackson district court. Opinion filed October 7, 1911. Affirmed.

*Clinton W. Welsh, Harry Friedberg, Ed Wright, E. D. Woodburn, F. T. Woodburn,* and *A. E. Crane,* for the appellant.

*John S. Dawson,* attorney-general, *Ernest R. Simon,* and *James A. McClure,* for the appellee.

The opinion of the court was delivered by

MASON, J.:    Freeman H. Tillotson was convicted upon the charge of kidnapping a child under twelve years of age, and appeals.

The statute under which the prosecution was brought reads as follows:

"Every person who shall maliciously, forcibly or fraudulently lead, take or carry away, or decoy or entice away, any child under the age of twelve years, with intent to detain or conceal such child from its parent, guardian or other person having the lawful charge of such child, shall upon conviction be punished by confinement and hard labor not exceeding five years, or imprisonment in the county jail not less than six months."    (Gen. Stat. 1868, ch. 31, § 47, Gen. Stat. 1909, § 2535.)

The information charged that the defendant maliciously and forcibly carried away Marion Bleakley, a child five years of age, with the intent to detain and conceal her from Mrs. Lottie Bleakley, who was her mother and who had the lawful charge of her.    The evidence tended to show these facts:    The child had been living with Mrs. Bleakley for about four years. In August, 1909, the two were staying in Topeka with Mrs. Bleakley's mother, Mrs. Thompson.    On the 9th of that month one Joseph M. Gentry entered the home of Mrs. Thompson, and in spite of her resistance and that of her nephew, who was present, forcibly seized the child and bore her to a buggy in which she was driven away.    Gentry carried a revolver, which he pointed at the nephew, telling him to stand back.    This warning proving ineffective, he struck him over the head with it.    The child was transferred to an automobile and taken to Kansas City.    Gentry was acting through the procurement of the defendant, who was employed for the purpose by a Mrs. Barclay, who claimed to have a legal right to the custody of the child.

The defendant claims that the conduct of Gentry, although of course unlawful and amounting to an assault and battery, did not constitute the offense charged, for the reason that Mrs. Bleakley was not in fact the mother of the child, and did not have lawful charge of her. Most of the errors alleged turn upon the soundness of this contention.

The evidence offered, a part of which was excluded as not pertinent to the issues, showed these further facts, which explain the grounds of the claim that Mrs. Bleakley was not the child's mother and did not have lawful charge of her. At her birth she was placed in an incubator at St. Louis to be brought to full development. Mrs. Barclay saw her there, and understanding that Mrs. Bleakley was her mother, and desiring to adopt her, procured the execution of documents intended to accomplish that purpose, Mrs. Bleakley consenting thereto. Mrs. Barclay thus obtained possession of the child in November, 1904, and took her to Illinois. In May, 1905, Mrs. Bleakley brought an action in a circuit court of that state asking that the child be restored to her, alleging that the adoption papers were void. Mrs. Barclay filed an answer maintaining that the child was not in fact the daughter of Mrs. Bleakley, but that even if she was the adoption proceedings had extinguished the mother's right to her custody. In July, 1904, the circuit court rendered judgment for Mrs. Bleakley, who received the child and brought her to Kansas. In September, 1905, Mrs. Barclay brought an action in the district court of Douglas county, Kansas, seeking a judgment awarding the child to her. Such a judgment was rendered by the district court in January, 1906. Mrs. Bleakley appealed to the supreme court, and on April 6, 1906, the judgment was reversed upon the ground that the judgment of the Illinois circuit court was controlling. (*Bleakley v. Barclay*, 75 Kan. 462, 89 Pac. 906.) The cause was remanded with

directions to enter judgment for Mrs. Bleakley for costs, and the district court rendered final judgment in accordance with the mandate. On April 10, 1906, the appellate court of Illinois reversed the judgment of the circuit court. (*Barclay v. The People*, 132 Ill. App. 338.)

The defendant maintains that by reason of the decision of the Illinois appellate court, Mrs. Barclay and not Mrs. Bleakley was the person lawfully entitled to the custody of the child, and he complains of the action of the trial court in refusing to admit in evidence the record of that decision, and the record of the judgment of the district court of Kansas which had been reversed. We regard the complaint as unfounded. The judgment of the district court of Douglas county which was set aside on appeal was of course no longer effective as an adjudication, and if it was material for any purpose the fact of its rendition sufficiently appeared from the opinion of this court accompanying the order reversing it, which was introduced in full. The decision of the Illinois appellate court did not supersede or in any way affect the force of the final judgment in the Kansas litigation. It did not purport to establish the right to the custody of the child at that time. It merely determined that the judgment of the circuit court was erroneous. Its precise scope is shown by the concluding language of the opinion, reading thus:

"We hold that on July 14, 1905, the court should have decreed that the best interests of the child required that it be left with the respondents [Mrs. Barclay and her husband]. We confine ourselves to stating what the judgment should have been at that time. Respondents did not bring the cause to this court at the next term, in October, 1905. They did try to bring it here by writ of error to our second term thereafter in April, 1906, but failed to get service by proper publication, so that the case did not reach us till the October term, 1906, one year later than respondents might have brought it here. Relator [Mrs. Bleakley] has now had and cared

for the child about a year and nine months. Whether it would now be for the best interests of the child that it should be taken from the relator and returned to the respondents we can not decide upon the present record. Relator's argument here states that after the Barclays delivered the child to her in conformity with the judgment of the court, she returned to her home in Kansas and took the child with her. The decision of the supreme court of Kansas in the case entitled *Charlotte E. Bleakley v. Charles A. Smart, Judge* [74 Kan. 476], 87 Pac. 76, shows that respondents and relator are litigating the custody of the child in that state, where the child now is, and doubtless the courts of Kansas will determine what is for the best interests of the child under present conditions, so that it may be that our decision will really only determine the question of costs." (132 Ill. App. 355.)

It is true that the first judgment rendered by the Kansas district court was reversed specifically upon the ground that the judgment of the Illinois circuit court was controlling, and four days after the reversal the Illinois judgment itself was set aside on appeal. Possibly this fact might have been given consideration by this court upon a petition for a rehearing. Possibly it might have supported an application for a new trial in the district court. Possibly Mrs. Barclay might have maintained a new action on the ground that conditions had changed, under the rule applied in *Messing v. Faulkner*, 83 Kan. 115, 109 Pac. 1001. But at all events, so long as the final judgment in the Douglas county case was not vacated and was not superseded by a later judgment covering the same subject matter, it was conclusive evidence that Mrs. Bleakley's custody of the child was lawful.

The defendant suggests that the final judgment in the Kansas litigation did not determine the right to the custody of the child, but had only the effect of a dismissal of the proceedings. The form of the judgment was that the defendant, Mrs. Bleakley, should recover her costs. This is to be interpreted in the light

of what had actually taken place. The case had been heard upon its merits. The question tried was, Which party was entitled to the custody of the child? The decision of the supreme court was that this right was lodged in Mrs. Bleakley and not in Mrs. Barclay. The reason given for the decision was the existence of the Illinois judgment, but the ultimate thing decided was that Mrs. Bleakley should have the charge of the child. As the child was already in her care no order for any change in that respect was necessary, and the judgment in her behalf for costs amounted to a general judgment in her favor. "When a decision is made which if adhered to compels the determination of a controversy in favor of the defendant, and then he is given a judgment for the costs of the action, in the absence of anything to indicate the contrary this may and should be regarded as a final judgment against the plaintiff." (*White v. Railway Co.*, 74 Kan. 778, 784, 88 Pac. 54.)

The defendant complains of the refusal of the trial court to allow him to attempt to prove that the child was not in fact the daughter of Mrs. Bleakley. Although the allegations of the information in that regard were conjunctive, it was only necessary for the state to prove that Mrs. Bleakley was either the mother or the person having the lawful charge of the child. It was not required to establish both conditions. Inasmuch as the record evidence demonstrated that Mrs. Bleakley had lawful charge of the child, the question of its actual maternity became immaterial.

The defendant further complains of the refusal of the trial court to give an instruction to the effect that he should not be found guilty if the child was taken under a claim of right, resting upon reasonable grounds. In support of this complaint decisions are cited holding that one taking personal property under an honest but mistaken belief that it belongs to him is not guilty of larceny. The analogy between the theft of goods and

the kidnapping of a child is not complete, and facts that would serve as a defense upon the one charge would not necessarily do so upon the other.   Cases might arise where the forcible taking of a child from one rightfully in charge might be excused by showing an innocent mistake as to the actual facts.   But such a situation is not presented here.   For over three years after the supreme court of Kansas had decided that Mrs. Bleakley was the rightful custodian, the child remained with her; and the decision, and the final judgment based upon it, stood unchallenged.   They who forcibly seized and bore the child away can seek justification only on the theory that they were acting for Mrs. Barclay, who was the moving party in the action in which the judgment had been rendered.   If she, or those acting for her, believed that the reversal of the original Illinois judgment was a ground for changing the order made in Kansas, the courts were open for the consideration of that contention.   The attempt to deprive Mrs. Bleakley of the child by violence can not be justified by reliance upon a mistaken view of the effect of the action of the Illinois appellate court.   Even if the situation had been such that by reason of the action of the Illinois courts Mrs. Barclay was entitled to the custody of the child, there is reason and authority for saying that while this might protect her personally against a prosecution for kidnapping, the defense would not be available to others.   The violent invasion of a peaceful home by an armed man, acting for hire, and the bearing away of a child from one claiming to be its mother and having its actual custody, seems to the ordinary understanding to amount to the statutory offense of kidnapping, irrespective of what effect the courts might finally give to apparently conflicting decisions.   A somewhat similar question was considered in *State v. Brandenburg,* 232 Mo. 531, 134 S. W. 529.   There a conviction on the charge of kidnapping was sustained, notwithstanding the defendant was acting for the mother, who would not

herself have been liable to prosecution. The court said:

"We are of the opinion that the right of one parent to invade the possession of another parent, to take or decoy away their mutual offspring, if such a right exists, can not be delegated to an agent, as the mother attempted to do in this case. Any other construction of the statute would result in untold confusion, litigation, and probably in assaults and other breaches of the law.

"To rule otherwise would be to hold that when the parents are living apart, and a child is stolen or decoyed away from one of such parents, he or she must first ascertain whether the party who took or decoyed the child away is an agent of the other parent, or a mere kidnapper, before having such culprit arrested. The letter and spirit of the law we are now construing, and also the welfare of those unfortunate children whose parents are living apart, and who are denied the soothing atmosphere and benignant influence of homes where conjugal love reigns supreme, forbid us from subscribing to any such construction of the statute as the defendant contends for." (p. 538.)

The trial court was asked to give a somewhat extended instruction regarding the effect of evidence concerning the defendant's good reputation. This was refused, but a general instruction was given on the subject. Apart from any question of the technical accuracy of the proffered instruction, we think no prejudice could have resulted from its refusal, in view of the character of the defense.

The information described the person having charge of the child as Lottie Bleakley. The evidence was that the name was Charlotte. This is relied upon as a variance. "Lottie" is a well known diminutive of "Charlotte," and even under the most technical rules the words would be regarded as identical, and constituting only one name. (*The State v. Watson*, 30 Kan. 281, 1 Pac. 770.) But if the fact were otherwise the difference in designation would be immaterial, inasmuch as

it is clear that it could not possibly have misled the defendant or in any way hampered him in his defense.

Other assignments of error, which are not thought to require specific statement, have been examined and are found not to be well taken.

The judgment is affirmed.

BENSON, J., not sitting.